## SIDOR v. DREEBEN.
### No. 14309.

Court of Civil Appeals of Texas. Dallas.
Feb. 9, 1951.

Rehearing Denied March 9, 1951.

Jack C. Burroughs, Dallas, for appellant.

C. C. Renfro, Dallas, for appellee.

CRAMER, Justice.

This is an appeal from a summary judgment entered under Rule 166–A, Texas Rules of Civil Procedure. Appellee as plaintiff sued appellant as defendant to recover $5,000, as principal, plus interest, attorney fees, costs, etc., on a note executed by defendant to plaintiff. The parties will be referred to as in the trial court. Defendant by answer alleged that the note was obtained by fraud and by misrepresentations made for the purpose of inducing defendant to execute the note; that the note was part of an agreement which dissolved a partnership between the parties; also plaintiff's breach of a contemporaneous oral agreement to secure at a future date $10,000 from his uncle and place $7,500 thereof in the then partnership business; tear up the note; and then reinstate the partnership and continue business as before.

The affidavits as to the facts most favorable to appellant show the parties had theretofore been partners in a pants manufacturing business which had become heavily indebted. The note sued on was executed by defendant as a consideration to plaintiff under a written contract which unconditionally dissolved the partnership; vested all assets of the partnership in defendant, with authority in defendant to continue such business under the same or any other name he desired; defendant assumed and obligated himself to pay all liabilities of the partnership known as Sidor Pants Company, contingent or otherwise, arising in tort or contract, and to save plaintiff harmless therefrom. Each party released the other from all liability arising from or connected with such partnership. Defendant also testified by deposition that he signed the agreement prior to the execution of the note; that Meyer Rachofsky was his banker; that the partnership owed the bank; that his banker recommended that Dreeben, not being a worker in the factory, step out, since his salary of $75 per week was a dead loss; therefore the business did not justify two salaries; that he signed the agreement and gave it to plaintiff because plaintiff begged him, saying: "I will come back within thirty or sixty days, at least—come back with $7,500 and tear up that note." He replied to plaintiff: "If you are not coming back, and if the business makes it, I will pay it." The attorney told him, "You cannot put that into the note; that's between you and Dreeben."

After the agreement was signed defendant took charge of the business, handled all production, received all money, paid all employees, made payments on the bank note and had complete charge of the business. Plaintiff had nothing further to do with the business. It further appears from the record that defendant conducted the business until the following January, and then liquidated it. Defendant paid all gen-

eral creditors and the bank. Defendant admitted all matters he testified about (except the dissolution agreement and the note) were verbal.

Defendant also testified that as a part of the original agreement plaintiff represented that the assets inventoried $15,000; but the property on hand was only $10,000, and that he said nothing to the plaintiff about such $5,000 difference until this suit was filed. Defendant further testified:

"Q. Now, when did you find out that it was only ten thousand ($10,000) dollars? A. When found out—when I looked it over—there was used parts, worthless—that there was three hundred ($300) dollars; there was five (5) year old bedding that was obsolete; taken at a hundred (100) cents on the dollar—obsolete buttons was taken at hundred (100) cents on the dollar in the inventory.

"Q. When did you find out that it was obsolete? A. Well, when he stepped out, you know, we started checking; I don't know what date—days or where it was.

"Q. When did you quit checking? A. I didn't check nothing, you know, until he come back with seventy-five hundred ($7,-500) dollars; I didn't check nothing.

"Q. When did you expect him to come back with the seventy-five hundred ($7,500) dollars? A. During March and April; I don't know—May and, finally, in June he came down and surrendered keys; said he couldn't raise the money.

"Q. There wasn't anything talked about that before Meyer Rachofsky? A. Talked with Meyer Rachofsky before I signed the note, and my lawyers—was absolutely—because, probably, know him better than I; I still thought he was gentleman; maybe he is but, you know, lost—I lost five thousand ($5,000) dollars on top of which I was creditor; I didn't pay myself; I paid the obligations outside; I lost the five thousand ($5,000) dollars, and I am losing five thousand ($5,000) on top of that * * *."

He further testified that no inventory was taken after he purchased the assets and that he only knew that there wasn't as much merchandise there as was represented "* * * from what I realized for it."

On this record the trial court rendered a summary judgment in favor of plaintiff for the amount of the note, principal, interest, attorney's fees, costs, etc.

Appellant briefs five points of error, in substance that the summary judgment cannot be sustained since the record shows (1) a bona fide dispute as to the material facts; (2) false representations made for purpose of inducing appellant to execute the note; (3) fraud properly pleaded; (4) sworn pleadings raising issues of fraud; (5) a sworn affidavit showing a good defense; (6) which controverted appellee's affidavit. Such points all raise the same question, to wit: Do the sworn pleadings and evidence of appellant raise a disputed issue of fact for a court or jury?

The facts asserted by appellant as raising disputed issues for the jury are: (1) the alleged representations by appellee that the inventory value was $15,000, when the actual value was only $10,000; and (2) the alleged representation by appellee that he would secure money from his uncle and come back and place $7,500 in the business to equal appellant's interest, and then tear up the $5,000 note sued on; and thereafter the partnership dissolution would mean nothing.

On the question of the inventory, although the evidence set out above is not too strong, in our opinion it does raise a disputed issue of fact for a jury or court under the good faith rule applying to transactions between partners. Such rule requires full disclosure of every material fact by each partner to the other. In Johnson v. Peckham, 132 Tex. 148, 120 S.W.2d 786, 787, 120 A.L.R. 720, the Court approved the textbook rule as follows: "'* * * Since each is the confidential agent of the other, each has a right to know all that the others know, and each is required to make full disclosure of all material facts within his knowledge in any way relating to the partnership affairs. This necessity for good faith and the making of a full disclosure of all important information applies in the case of sale by

one partner to another of his interest in the partnership. Such a sale will be sustained only when it is made in good faith, for a fair consideration and on a full and complete disclosure of all important information as to value.' "

The rule is subject to certain exceptions set out in the Court of Civil Appeals opinion in the same case, 98 S.W.2d 408; but such exceptions will not be further noticed since not material to the facts in the instant case. Applying the applicable rule to the facts here, the failure, if any, of appellee to disclose the true facts with reference to the inventory as testified to by appellant, was an issue for the court or jury trying the cause. The trial court therefore erred in sustaining the motion for a summary judgment. Since the other question raised will be more fully developed on a trial to the merits, we pretermit a discussion thereon.

For the error pointed out, the judgment is reversed and the cause is remanded for another trial.