**NATIONAL SURETY CORPORATION,**
Appellant,

v.

**L. E. WELLS, Sr., V. R. Hopfe, and Ella Hopfe, and L. E. Wells, Jr., a Minor,**
Appellees.

No. 18363.

United States Court of Appeals
Fifth Circuit.

Feb. 7, 1961.

Rehearing Denied March 7, 1961.

104

B. Jeff Crane, Jr., Vinson, Elkins, Weems & Searls, Houston, Tex., for appellant.

James H. Wright, Ben G. Sewell, Miller, McClure, Lucas & Wright, Houston, Tex., for appellees, V. R. Hopfe and wife, Ella Hopfe.

Before RIVES, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The problem here has to do with timeliness of transmission to an insurer of a copy of the court process when the assured is not only an additional assured under the Omnibus Clause, but is a minor as well. The District Court held the notice timely and sufficient. We agree.

Squeezing out all insignificant contradictions, the facts are neither complex nor conflicting and may be simply stated. Doing so, however, highlights the technical nature of the defense which the insurer urges upon us.

 Wells, Jr., then sixteen, on August 18, 1957 was driving the car belonging to his father, Wells, Sr. He had a collision with the Hopfe's car causing them property and personal injuries. Wells, Sr., as a soliciting insurance agent selling automobile insurance under this Insurer's policies to the public, had obtained one covering his own car. It was the usual Texas Standard Automobile Policy and contained the traditional Omnibus Clause—well known to those in the insurance trade, to some lawyers and perhaps fewer judges, but hardly within the speaking acquaintance of a 16-year-old high school student. Wells, Sr. gave immediate notice of the occurrence to the Insurer. The Insurer proceeded to investigate the case with a thoroughness which it now acknowledges to have been completely ample. That investigation included an interview with young Wells, Jr. at which time he gave a detailed written statement. The facts showed without controversy that he was driving his father's car with permission and whether this lad knew it or not, the law and the policy regarded him as an additional assured. As such an assured, the Insurer owed him the absolute duty of defense. American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Co., 5 Cir., 1960, 280 F.2d 453. It undertook to supply that defense and actually carried on negotiations with the Hopfes looking toward settlement. In early October it received an official information copy of a claim letter written by the Hopfes' counsel to Wells, Sr. demanding satisfactory disposition and warning of a suit if settlement were not forthcoming. Up to this time the Insurer knew everything it possibly could have known had Junior, not Senior, been the instigator of notice. There had, therefore, been literal, full, substantial and complete compliance with the policy requirement of notice of the occurrence.[1]

 About October 25 the Hopfes then filed in the Texas State Court what we call the first suit against Senior and Junior. Citation was served on each. The boy turned his citation over to his father thinking that not only would his father handle it for him, but even more understandably, that his father would

---

1. The policy contained under Conditions the following:

"1. Notice of Accident—Coverages A, B, and C: When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

have to bear the responsibility for what he had done.[2]

But Wells, Sr. did not forward the citation to the Insurer. It is undisputed that this was inadvertent for no suggestion has ever been faintly uttered that the Wellses, Senior or Junior, father or son, agent or assured, have failed to cooperate. But no harm was yet done for no default judgment had been taken by the Hopfes. During a routine conversation between Wells, Sr. and the Insurer's adjustor about January 2, the Insurer learned that this first suit had been filed. It asked for the papers but carefully stated that in view of the delay the Houston office would be guided by superior instructions. These were soon received, the substance being that there was no coverage since the policy had been breached for failure of the Assured to "immediately forward" the citation after service about November 5.[3] The Insurer, thereafter, through its attorneys, refused to file an answer in the first suit noting that an answer had already been filed by Wells, Sr's. personal attorney. About this time, and before any judgment had been obtained or trial had, the Hopfes dismissed the first suit without prejudice as the Texas Rules permit as a matter of right. Tex.R.Civ.P. 164.

Shortly thereafter, on February 1, 1958, an identical action, which we call the second suit, was filed in the State Court against Wells, Sr. and Junior. Citations were served upon each and these were immediately forwarded to the Insurer by registered mail. Just how it could distinguish between the duty to defend Wells, Sr. and Wells, Jr. has never been made to appear, but the Insurer did just that. Through its counsel the Insurer advised Wells, Sr. (but not Junior) that it would undertake his defense only under a non-waiver agreement. But Wells, Sr., who had obtained his own counsel during the first suit, American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Co., 280 F.2d 453, 456, rejected the offer. Despite this, the Insurer did enter an appearance and file an answer in the second suit on behalf of Wells, Sr. Wells, Jr. stood undefended until on suggestion of this Insurer the Court appointed a guardian *ad litem*. There matters stood at the time this Federal Court action for declaratory judgment was tried and determined.[4]

In assaying the correctness of the District Court's disposition we start with the acceptance of the Insurer's assertion that with respect to forwarding legal process, just as in the situation concerning notice of the occurrence, Texas regards as immaterial a showing of prejudice. New Amsterdam Casualty Co. v. Hamblen, 1945, 144 Tex. 306, 190 S.W. 2d 56, 59; Klein v. Century Lloyds, 1955, 154 Tex. 160, 275 S.W.2d 95, affirming Tex.Civ.App., 275 S.W.2d 91. If the condition of the policy is not satisfied, the contract is treated as breached and the Assured fails, not because what he did or did not do injured the insurer, but rather because the assured did not perform his contractual obligations.

But the apparent severity of this approach is ameliorated in many ways. First "immediate" (note 3, supra) is not immediate in the sense of an instantaneous transmission of the process the moment the constable departs. Uni-

---

2. Actually, Texas has no family purpose doctrine and save for knowledge of dispositions, tendencies or infirmities, legal or physical, that make the minor child unworthy, the parent has no legal liability. 7 Tex.Jur.2d Automobiles §§ 222, 225 (1959).

3. The policy provided immediately after the notice of accident provision, note 1, supra:

"2. Notice of Claim or Suit—Coverages A and B: If claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representatives."

4. Since that time the second State Court suit was tried. Wells, Sr. was dismissed as a defendant and judgment was obtained against Wells, Jr. Upon motion this present appeal as to Wells, Sr. was dismissed as moot.

formly this, as in the case of notice of the occurrence (note 1, supra), is treated as requiring transmission within a reasonable time considering all of the circumstances. 8 Appleman, Insurance Law & Practice § 4734 (1942).[5] A significant circumstance, as we shall discuss later, may be the age and capacity for understanding of the assured. So, too, may be knowledge that the coverage exists in one's favor. In other situations conduct of the insurer will be treated as a waiver of the breach. 8 Appleman § 4692. And here we have the unique situation of a first suit being dismissed before it ripened into any legal effectiveness followed thereafter by a second suit as to which process was forwarded without delay.

In our solution of this case, there are several questions vigorously argued which we need not finally determine. One relates to waiver by the Insurer in view of its active, open defense of Wells, Sr. in the second suit after rejection by him of the proffered non-waiver agreement. The authorities certainly point in the direction of waiver. 8 Appleman §§ 4692, 4747 at pp. 49, 148; Indemnity Company of America v. Pitts, Tex.Com. App. 1933, 58 S.W.2d 53; Schmidt v. National Automobile & Casualty Insurance Co., 8 Cir., 1953, 207 F.2d 301, 38 A.L.R.2d 1142; Miller v. Union Indemnity Co., 1924, 209 App.Div. 455, 204 N.Y.S. 730. We have recently explored at some length the serious and correlative obligations and implications of the insurer's duty to defend. American Fidelity & Casualty v. Pennsylvania Threshermen & Farmers' Mutual Casualty Co., 5 Cir., 1960, 280 F.2d 453, 460. And if this amounted to a waiver, there

is the further problem whether this rubbed off onto Wells, Jr. Likewise, there is the question whether an assumed failure properly to forward process in the first suit may have been cured effectively by the dismissal of that suit and the commencement of the second suit in which citation was quickly transmitted. One case does hold that the failure is not cured by the subsequent suit.[6] But it has been sharply criticized.[7] To the contrary are the Arkansas cases which measure both the duty to defend and timeliness of transmission of process in respect of the particular suit rather than in terms of a prior dismissed action. M. F. A. Mutual Insurance Co. v. White, Ark.1960, 334 S.W.2d 686, 688; Southern Surety Co. v. Puryear-Meyer Grocer Co., 1922, 151 Ark. 480, 236 S.W.2d 841. Much can be said in favor of this approach. Certainly (assuming no other breach) the mere failure of the assured to forward process in one case would not, for example, terminate coverage or duty to defend in suits thereafter instituted by other damage plaintiffs in a multiparty accident. Nor would it as to the same injured person (e. g., a minor or a decedent) where the first suit under local practice was a nullity because brought by the wrong party or in the wrong court. Nor would it as to a suit which failed to set forth adequately an occurrence within the coverage, 8 Appleman § 4683–6, which might be remedied by an amended complaint served and promptly forwarded to the insurer. 8 Appleman § 4740 at 127; Press Pub. Co. v. General Accident, Fire & Life Assurance Corp., 1916, 160 App.Div. 537, 145 N.Y.S. 711, affirmed 217 N.Y. 648, 112 N.E. 1072. But Texas has not yet made a choice and on the

---

5. Some Texas cases are collected in note 32 at p. 107. General Acc. Fire & Life Assurance Corp. v. Butler, Tex. Com.App., 1928, 5 S.W.2d 976; National Surety Corp. v. Diggs, Tex.Civ.App., 1954, 272 S.W.2d 604 (error ref. n. r. e.).

6. Employers Liability Assurance Corporation v. Perkins, 1935, 169 Md. 269, 181 A. 436. See also Harmon v. Farm Bureau Mutual Automobile Insurance Co., 1939, 172 Va. 61, 200 S.E. 616.

7. To the text statement that "It has even been held that the [damage suit] plaintiff could not annul a judgment which he has secured and start a new suit, which the insurer could defend", 8 Appleman § 4738 at 123 cites the Maryland decision, note 6, supra, and then puts this rhetorical parenthetical question: "(What could be fairer, if the insurer had reasonable opportunity to investigate the accident?)."

equivocal materials now available to us, Bernhardt v. Polygraphic Co. of America, 1956, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199, 206, 208–210, the expressions of the Court of Civil Appeals [8] thereafter considered by the Supreme Court to have been on a point not properly raised afford too dim an Erie light upon which to make any reliable forecast of the ultimate Texas view.

We think this case should be disposed of on the basic proposition that considering Wells, Jr. was a minor and an omnibus assured, not a formal party to the insurance contract, he made timely transmission of the process as soon as, with reasonable diligence for one of his maturity, he became aware of coverage in his favor. The facts on this are not in dispute and to the extent that variable inferences were open, they were drawn by the trial judge whose business it is to do just that. F.R.Civ.P. 52(a), 28 U.S. C.A. Wells, Jr. knew in a general way that his father had insurance on the car. But he did not know that it protected him or anyone other than his father. He did not know that he was regarded as an "additional assured." It was not until all of the agitation by the Insurer over the failure of Wells, Sr. to have forwarded the process in the first suit that he learned of this legal fact for the first time. By that time he had (about January 3, 1958) personally delivered to the Insurer the citation in the first suit. And within a few days after the second suit, he forwarded that process as well.

We regard these circumstances as decisively significant in determining whether, as Texas defines "immediate," the forwarding of process by this young lad was within a reasonable time. Few boys have heard of omnibus, and if they have it undoubtedly means something other than insurance. Rare will be the high school boy who will have read, or reading will have understood, the sometimes weird language of an insurance policy. The law as an unavoidable necessity for effectual enforcement of contracts, may have to attribute knowledge of contents (and the duties spelled out thereby) to the parties to a contract. But it is carrying fiction to outer space to charge one who merely knows that another has a contract with constructive knowledge that such contract was made for his benefit as well if—and the if is a big one—a certain occurrence takes place under certain conditions. It becomes only more unrealistic when in this process, upon that constructive knowledge, the sometime-maybe-third-party-beneficiary is thereby subjected to the unknown duties and obligations to make some sort of report or forward some sort or some kinds of papers to some company whose name and address is unknown.

While perhaps not previously delineated in quite this way, the law preserves its noble claim to reason by rejecting such artificiality. In this specific area the text writers and the cases are against the Insurer's contentions here as Appleman [9] makes so clear:

"An additional insured, operating an automobile with the permission of

---

8. In Klein v. Century Lloyds, Tex.Civ. App., 1955, 275 S.W.2d 91, the Court of Civil Appeals held, the policy breached for failure to give timely notice of the occurrence, for failure to cooperate and, presumably for good measure, failure to forward process in the first suit even though process was immediately forwarded in the second suit after dismissal of the first. The Supreme Court, 154 Tex. 160, 275 S.W.2d 95, 98, declined to rule on that question stating "That question was not presented in the motion for a new trial in the district court, in the brief or motion for rehearing in the Court of Civil Appeals, or by any point in the application for writ of error. We, therefore, are not authorized to consider it."

9. 8 Appleman §§ 4738, 4745, at 124, 143. In support of these texts Appleman, with ample basis, cites: Scott v. Inter-Insurance Exchange of Chicago Motor Club, 1933, 352 Ill. 572, 186 N.E. 176, affirming 267 Ill.App. 105; Unverzagt v. Prestera, 1940, 339 Pa. 141, 13 A.2d 46; Dixon v. United States Fidelity & Guaranty Co., Mo.App., 1949, 155 S.W.2d 313; R. H. Macy & Co. v. General Accident,

the owner, has been held to be a proper person to give notice to the insurer. Such additional insured could not be expected nor required to give notice before he knew of the existence of the policy or of the fact that he was covered thereby.

" * * *

"An insured's lack of knowledge of the existence of insurance excused a delay in giving notice, as a matter of law, where he was not guilty of a lack of due diligence. And an additional insured was under no duty to give notice, until he had knowledge that he was covered by the policy."

By adhering to this standard of "reasonableness" the law avoids the erection of automatic immunities, whether it be for minors as a class or omnibus assureds as a class. Whether process is forwarded quickly enough depends on the reasonableness of the action of any such person considering his knowledge and understanding of the probable existence of coverage and some duty to act flowing therefrom. The law does not, as the Insurer fears, therefore let down the bars. The law takes the contract as insurers have drawn it—a coverage extended to times, places and persons unknown or yet unborn—and applies to it a rule of reason

Fire & Life Assurance Corp., 1955, 4 Misc.2d 89, 148 N.Y.S.2d 10, and Pitts v. Aetna Casualty & Surety Co., 2 Cir., 1954, 218 F.2d 58, certiorari denied 348 U.S. 973, 75 S.Ct. 535, 99 L.Ed. 757.
And to these may be added Jameson v. Farmers Mutual Auto Ins. Co., 1957, 181 Kan. 120, 309 P.2d 394. See also Spradlin v. Columbia Ins. Co., 1950, 34 Tenn. App. 17, 232 S.W.2d 605, and Whitehead v. National Casualty Co., Tex.Civ. App., 1954, 273 S.W.2d 678, error ref. Unlike the equivocation in Klein, note 8, supra, this opinion proves which way the Erie wind blows in Texas.
An interesting recent case is Home Indemnity Co. v. Ware, D.C.Del.1960, 183 F.Supp. 367. A lawyer-father and a business-man-step-father of a boy who "stole" a neighbor's car were held excused for tardy notice on the ground that it was reasonable that it "never occurred" to either of them that the family

that when persons not parties reasonably learn that they are benefited subject to certain conditions, they must then, but not before, perform them.[10]

Affirmed.

automobile policy (in its contemporary form subsequently modified) would cover a car stolen by a member of the household. The Third Circuit has just affirmed, 1960, 285 F.2d 852. They emphasize that it is a question of reasonable behavior. Laymen, young or old, need not have a prescience exceeding that of Judges.

10. We sound a special caveat. We are dealing here with a case in which the minor within what we conclude was a "reasonable" time forwarded the process to the Insurer who suffered no prejudice whatsoever. We do not undertake to decide or intimate, one way or the other, what will or should be the result in a case in which discovery of coverage and report or transmission of process by the omnibus assured comes at such a late time that the Insurer has been, or will likely be, prejudiced or injured.