218 A.2d 467.

GERARD L. CINQ-MARS *vs.* THE TRAVELERS INSURANCE COMPANY.

APRIL 7, 1966.

PRESENT: Roberts, C. J., Paolino and Joslin, JJ.

604

JOSLIN, J. This is an action of case in which the plaintiff seeks recovery as an additional insured under the omnibus clause of a comprehensive automobile liability insurance policy issued by the defendant to Perry's Express Company, Inc. The case was tried to a justice of the superior court sitting with a jury and at the conclusion of the testimony both parties expressly waived the benefit of a jury determination and the jury was discharged. Thereafter, the trial justice entered a decision for the defendant and the case as briefed and argued raises only the plaintiff's exception to that decision.

The occurrence constituting the basis for the controversy took place on October 2, 1959. On that date plaintiff was engaged on behalf of his employer, Perry's Express Company, Inc., in transporting and delivering three lace looms, each of which weighed approximately from twelve to fifteen tons, to New England Lace Company in the city of Pawtucket. To complete delivery of the looms it was necessary to raise them from the flatbed trailer upon which they were transported to an opening in the wall of the consignee's mill located about eight feet above the trailer, and for that purpose a crane owned and operated by James F. Kelley was employed by Perry's. As Kelley was hoisting one of the looms and after it had reached the opening in the wall and was partially inside the mill, the cable snapped, the loom fell and plaintiff was injured. To recover damages for those injuries plaintiff brought suit against Kelley.

That case, the suit of plaintiff against Kelley, was tried to a justice of the superior court sitting without a jury. He found that Kelley was negligent in using a cable of insufficient strength to carry the weight of the loom and decided for plaintiff in the amount of $17,500 and on review we sustained. See *Cinq-Mars* v. *Kelley,* 95 R. I. 515. Thereafter, when Kelley did not fully satisfy the judgment against him, plaintiff brought this separate suit against defendant as Perry's insurer for the unpaid balance. The plaintiff's theory is that Kelley was covered as an additional insured under Perry's policy and that G. L. 1956, §27-7-2, permits him as a judgment creditor to proceed directly against the tortfeasor's insurer for the unsatisfied portion of the judgment.

### POLICY COVERAGE

At the outset we are concerned with whether the policy in which Perry's was the named insured obligates defendant, the insurer, to pay plaintiff for the injuries he sustained as a result of Kelley's negligence in using an insufficient or defective cable in the hoisting operation. In that policy defendant agrees to pay on behalf of Perry's all sums which it as the "insured" shall "become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile." In the omnibus provision, so called, the unqualified word "insured" is defined as including "the named insured and * * * any person while using an owned automobile * * * provided the actual use of the automobile is by the named insured or with his permission * * *." A further stipulation provides that "Use of an automobile includes the loading and unloading thereof."

An omnibus provision like that in this policy is usually found, and in some states is required to be included, in automobile liability insurance policies. In a general way it

extends the policy coverage to persons in addition to the named insured who use the insured's vehicle with permission, and if the policy also contains a "loading and unloading" stipulation, the phrase "Use of an automobile" in the omnibus provision is extended to include operations or acts in which the movement of the vehicle itself plays no part, and to provide cover during a period when goods are being moved on to or off of a stationary vehicle. *American Motorists Ins. Co.* v. *Nashua Lumber Co.*, 103 N. H. 147; *Pacific Automobile Ins. Co.* v. *Commercial Casualty Ins. Co.*, 108 Utah 500.

Policies containing similar provisions have been a frequent subject of litigation, 95 A. L. R. 2d 1122, 160 A. L. R. 1259, and the coverage furnished by a trucker's insurer whose policy so stipulates extends to liability for accidents caused by a third party's negligence provided they occurred during the loading or unloading process and were causally connected with it. *Maryland Casualty Co.* v. *New Jersey Mfrs. (Casualty) Ins. Co.*, 48 N. J. Super. 314, aff'd 28 N.J. 17; *Pacific Automobile Ins. Co.* v. *Commercial Casualty Ins. Co., supra.* The necessary causal relationship exists if the accident occurs as the third party is loading or unloading and delivering with the insured's permission and at his direction, *Bituminous Casualty Corp.* v. *American Fidelity & Casualty Co.*, 22 Ill. App. 2d 26, *American Automobile Ins. Co.* v. *American Fidelity & Casualty Co.*, 106 Cal. App. 2d 630, *Wagman* v. *American Fidelity & Casualty Co.*, 304 N. Y. 490; and since it is undisputed in the present case that Kelley was acting at Perry's direction when the loom fell, the decisive question is whether the accident occurred during the unloading process.

When unloading ends and delivery commences is an issue on which there is a division among the authorities. Some courts follow the so-called "coming to rest" doctrine and deny coverage for accidents occurring after the material has

been removed from the vehicle and has started on its way to be delivered by an independent means. The critical time under this view is when the material is no longer being removed from the vehicle. *St. Paul Mercury Indemnity Co.* v. *Standard Accident Ins. Co.,* 216 Minn. 103; *Stammer* v. *Kitzmiller,* 226 Wis. 348.

In most jurisdictions, however, that doctrine is rejected and the "complete operation" view prevails. It is broader in scope than the "coming to rest" theory and includes as a part of the unloading process not only the immediate removal of the goods from the vehicle, but also the entire operation of moving the goods between the vehicle and the place to which they are being delivered, and under it unloading comes to an end only when the continuing operation which commenced with the taking of the article from the truck has been completed by its delivery to the customer. *Bobier* v. *National Casualty Co.,* 143 Ohio St. 215; *Wagman* v. *American Fidelity & Casualty Co., supra;* Risjord, *Loading & Unloading,* 13 Vand. L. Rev. 903.

In our judgment the majority view is the sounder. To hold that unloading includes only the mere act of removing and does not include the continuous and uninterrupted operation of carrying the goods from the vehicle to the point where delivery is to be made would in our view unduly limit the extent of the policy beyond what is reasonable. Our neighboring state of Massachusetts went further in *August A. Busch & Co.* v. *Liberty Mutual Ins. Co.,* 339 Mass. 239, and found that, the insurer who drafted the loading and unloading provision must have been aware that the strong weight of authority follows the "complete operation" doctrine and therefore contemplated and intended that the language selected would probably be so construed.

The use in the unloading process of such devices as a crane or a hoist or a winch will not break the chain of continuous operation, and coverage under an unloading stipu-

lation in such instances will not turn on whether additional or other equipment was used but on whether the unloading process was going on at the very time the accident occurred. *Employers Mutual Liability Ins. Co.* v. *Pacific Indemnity Co.*, 167 Cal. App. 2d 369; 7 Appleman, Insurance Law & Practice, §4322, p. 158.

Illustrative of this principle is *Bituminous Casualty Corp.* v. *American Fidelity & Casualty Co.*, *supra*, where a trucker's insurance carrier was held liable to a third person for injuries caused when a diesel engine, as it was being raised from the insured's truck for delivery to the customer's premises, fell because of the negligent operation of the consignee's hoist used by one of its employees in the removal operations.

The defendant seeks to distinguish the *Bituminous Casualty Corp.* case and those like it from the present case by arguing that in the former the negligence was in the operation of the mechanism used to unload whereas here the effective cause of the accident was a defect in the equipment used in the unloading process. It cites *Travelers Ins. Co.* v. *Employers Casualty Co.*, Texas Civil App., 370 S.W.2d 105, as authority for the rule that there should be no coverage under an unloading provision where the predominating cause of the accident is a defect in the unloading equipment rather than negligence in its operation. In that case three persons were killed when a crane carrying a bucket filled with concrete from a ready-mixed concrete truck to a construction form into which the material was to be poured buckled and fell because of a defect in the equipment. It is true that the court there as one of four alternative grounds for denying liability said that an equipment defect does not constitute unloading. Whatever precedential value that case may once have had, however, was lost when on appeal it was reversed by the Texas supreme court. *Travel-*

610

ers *Ins. Co.* v. *Employers Casualty Co.*, Texas, 380 S. W. 2d 610.

Moreover, on almost identical facts the New York court in *Lamberti* v. *Anaco Equipment Corp.*, 16 App. Div. 2d 121, reached a contrary conclusion saying at page 124: "The sole test is whether the means used was in the process of unloading. In this case the bucket was merely an instrument to effect the unloading." See also *St. Paul Mercury Ins. Co.* v. *Huitt*, 215 F. Supp. 709. The conclusion is inescapable that in determining whether coverage exists the type of negligence should be immaterial and that the same result should obtain irrespective of whether the injury is caused by improper operation of good equipment or by defective equipment.

In our judgment defendant undertook in its policy to cover the complete operation of removing the loom from Perry's truck and hoisting it for delivery to the mill premises. That operation cannot be segmented so that the removal of the loom from the truck became a part of the unloading process separate and distinct from that of delivering it to the customer. Together the removal and the raising were a single and continuous operation and together they constituted unloading within the contemplation of the policy issued by defendant to Perry's.

## NOTICE

The defendant makes the additional argument, however, that it should escape liability because of Kelley's failure to comply with the policy condition requiring written notice of an accident to be given "as soon as practicable" after its occurrence. It is, of course, accepted law that compliance with such a policy condition is a condition precedent to an insurer's liability. *Sherwood Ice Co.* v. *U. S. Casualty Co.*, 40 R. I. 268; 8 Appleman, Insurance Law & Practice, §4732, p. 7.

The problem, however, is not with the rule, but with whether there has been compliance. Merely because the policy requires notice "as soon as practicable" or even that it be given "immediately" or "forthwith" or "as soon as possible" or "promptly" does not necessarily mean that it be instantaneous, and timeliness is neither gauged by a legal measuring stick nor subject to precise measurement. Instead, in this state and generally elsewhere the condition of timely notice is satisfied if the insured acts diligently and with reasonable dispatch in the light of all the circumstances and facts of the particular case. *Sherwood Ice Co. v. U. S. Casualty Co., supra;* 8 Appleman, *supra,* §4734, p. 22.

While compliance with a notice provision is required both by an additional as well as by a named insured, it often happens, as it did here, that a person protected under the omnibus clause lacks any knowledge of the existence of the insurance in his behalf. The courts recognize that coverage for him should not depend on the vigilance of the named policyholder in giving timely notice, and they consider his ignorance as an extenuating circumstance excusing his failure to comply. That extenuation, however, is subject to the requirement that the additional insured be without fault or negligence. The test for him, just as for the named insured, is whether he has reasonably met the notice stipulation and, in determining "reasonableness," ignorance of coverage as well as diligence in ascertaining whether it exists are both relevant circumstances. *Howell* v. *Frost,* 98 Ohio App. 127; *National Surety Corp.* v. *Wells,* 287 F.2d 102; *Scott* v. *Inter-Insurance Exchange of The Chicago Motor Club,* 352 Ill. 572; 8 Appleman, *supra,* §4745, p. 87.

Since Kelley was without knowledge that he was covered by the policy issued to Perry's by defendant, the only question for us to decide is whether he acted with proper dili-

gence. If he did, plaintiff who claims through him should recover; if he did not, plaintiff cannot succeed.

On the issue of diligence the facts are undisputed and the record discloses that defendant was not notified of the October 2, 1959 accident until August 30, 1960. That notice came from Perry's and was directed to the extent of the damage to the loom rather than to the plaintiff's injury. Although during the investigation which in due course followed, defendant learned of plaintiff's injury it was not until March 31, 1961 that it was notified that Kelley was claiming coverage for any liability on account thereof.

On these facts the trial justice, who assumed but did not decide that Kelley as an additional insured under Perry's policy was entitled to indemnity for the unsatisfied portion of plaintiff's judgment, found in substance that Kelley's delay of more than a year in giving defendant the required notice relieved it of liability. His rationale was that Kelley having been "in the business of operating a crane" for fifteen years and having had incidental association with the business of "loading" and "unloading" either was or should have been "somewhat familiar with the possible coverages that might be granted by an insurance company to a man in the business that he actually operated." In the light of those circumstances the trial justice concluded that Kelley should have contacted Perry's to ascertain the nature and extent of its coverage, and that his failure to do so constituted lack of due diligence.

The defendant cites a number of cases which it contends support the trial justice's conclusion. Typical is *International Harvester Co.* v. *Continental Casualty Co.*, 33 Ill. App. 2d 467, where a trucker's insurer was discharged from liability because the plaintiff, an additional insured under an omnibus clause, neglected for twenty-one months to give notice of an accident which occurred as the insured's truck was being unloaded at its freight dock. Although the plain-

tiff attempted to excuse its delay by explaining that it had been unable to ascertain the identity of the truck, the court attributed its lack of knowledge, not to the reason suggested, but rather to its own fault and negligence. In relieving the insurer of liability, it reasoned that an industrial giant like the International Harvester Company was not "unsophisticated in the world of commerce and insurance," and that for such a corporation with "all the record-keeping and investigative services at its command" not to have been able to ascertain within twenty-one months the identity of a truck which was being unloaded at the time of the accident was something less than due diligence.

Because a corporation like International Harvester Company was inferentially knowledgeable on insurance matters does not mean, however, that a person like Kelley was similarly knowledgeable. As to him, although the record discloses no more than that he had been in the unloading business for fifteen years and that he was a self-employer operating his own crane, the trial justice in substance drew the same inference as was drawn in the *International Harvester Co.* case and concluded that one in plaintiff's position, if diligent, should have inquired from Perry's whether its policy gave him any protection against claims for negligence.

We recognize that as a part of the judicial process it was the business of the trial justice to draw inferences, and we are prepared to accept his in preference to those we ourselves might draw from the same evidence provided that they logically and reasonably flow from the established facts. *Arden Engineering Co.* v. *E. Turgeon Construction Co.,* 97 R. I. 342, 197 A.2d 743; *Williams* v. *Rhode Island Hospital Trust Co.,* 88 R. I. 23, 38. We readily agree that he could properly charge Kelley with knowledge that Perry's had an automobile liability insurance policy. This certainly was within his ken. It was something else, however, for him to charge that solely on the basis of Kelley's long association

with the trucking business he should have realized that he might be a beneficiary on that policy. Of a similar inference the court in *National Surety Corp.* v. *Wells, supra,* said at page 107: "* * * it is carrying fiction to outer space to charge one [in Kelley's circumstances] who merely knows that another has a contract with constructive knowledge that such contract was made for his benefit as well if—and the if is a big one—a certain occurrence takes place under certain conditions."

The speculative and conjectural character of the inference drawn is pointed up by the contentions made by the defendant. On the one hand it argues and vigorously that coverage under Perry's policy did not extend to any unloading done by Kelley, while on the other hand it contends that, Kelley, who should have known the kinds of coverage available to truckers, was guilty of lack of diligence in not inquiring from Perry's as to the extent of its coverage. In all the circumstances we are constrained to find that the inference drawn by the trial justice lacks sufficient probative force to entitle it to acceptance on review.

The plaintiff's exception to the decision of the trial justice is sustained, and the defendant may appear before this court on April 15, 1966, to show cause, if any it has, why the case should not be remitted to the superior court with direction to enter judgment for the plaintiff in the amount claimed.

*Gunning & LaFazia, Raymond A. LaFazia, Bruce M. Selya,* for plaintiff.

*Boss, Conlan, Keenan & Rice, John T. Keenan,* for defendant.