DECISION
This is a consolidated administrative appeal of the October 4, 2001 decision of the Rhode Island Department of Business Regulation (Department), which denied the Appellants' motion to vacate the Emergency Order to Cease and Desist (Emergency Order). The Emergency Order was issued by the Department on October 26, 2000 and became permanent by operation of law on November 27, 2000. Jurisdiction is pursuant to R.I.G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
In September 2000, the Department received complaints from several Rhode Island residents who invested approximately $400,000 in the Total Health Care, Inc. investment program ("Total Health Care"), a corporation incorporated in Florida. Several representatives of Total Health Care had approached the Rhode Island investors to invest in a Comprehensive Outpatient Rehabilitation Facility. The Appellants and Total Health Care allegedly made numerous misrepresentations to the investors from at least May 1997 until the investors sought assistance from the Department in September 2000. Moreover, the Appellants and Total Health Care failed to register the securities in accordance with the Rhode Island Uniform Securities Act (RIUSA).
The Department issued an Emergency Order to Cease and Desist and of Intent to Impose Civil Liability under G.L. § 602 and § 712 and of Opportunity for Hearing on October 26, 2000, pursuant to G.L. 1956 § 7-11-712, to immediately halt the sale of the unregistered securities to Rhode Island residents. The Emergency Order named Total Health Care, Loren Friedman, Mark Silverman, Steve Waldman, Brian Koslow and Lee Barbach ("Appellants").[1] The next day the Department sent the Emergency Order to the Appellants at their corporate address listed with the Florida Secretary of State's Office. The Emergency Order was sent by both regular and certified mail in accordance with G.L. §7-11-708 and § 7-11-712. In late October 2000, and on November 1, 2000, "Paola Perez" signed for the certified mail.
The Appellants were entitled to thirty (30) days to request a hearing on the Emergency Order, pursuant to G.L. § 7-11-12, before the Emergency Order became permanent by operation of law on November 27, 2000.[2] The Appellants failed to respond to the Emergency Order within thirty (30) days — in fact not responding until almost four months later — and a default judgment was entered against them. On March 23, 2001, the Appellants filed a "Petition to be Relieved of the Default." The Director of the Department appointed a Hearing Officer to preside over the Appellants' motion and to make a recommendation to the Director. On May 3, 2001, oral arguments were heard on the Appellants' petition. The Hearing Officer ruled that the Emergency Order should not be vacated and that an evidentiary hearing would be held to determine whether or not a monetary penalty should be imposed against the Appellants.
The Appellants separately filed timely Notices of Appeal and Complaints with this Court. Subsequent to filing their appeals, the Appellants filed motions for a stay of the administrative proceedings to this Court and to the Department.[3] Prior to this Court's hearing on the Appellants' motions, the Department granted the requested stay. This Court consolidated the instant appeals.
 STANDARD OF REVIEW
The review of the Department decision by this Court is controlled by G.L. § 42-35-15(g) of the Administrative Procedures Act, which provides for review of contested agency decisions:
 "The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on the questions of fact. The court may affirm a decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency decision, pursuant to § 42-35-15, the Superior Court sits as an appellate court with limited scope of review.Mine Safety Appliances v. Berry, 620 A.2.d. 1255, 1259 (R.I. 1993). The Superior Court is limited to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston Ambulatory Surgical Associates, Ltd. v.Nolan, 755 A.2d 799, 805 (R.I. 2000) (quoting Barrington School Committeev. Rhode Island State Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992)). If there is sufficient competent evidence in the record, the court must uphold the agency's decision. Id. at 805 (citing Barrington School, 608 A.2d. at 1138). A judicial officer may reverse the findings of the administrative agency only in instances where the conclusions and the findings of fact are "totally devoid of competent evidentiary support in the record," (Bunch v. Board of Review, 690 A.2d 335, 337 (R.I. 1997); (Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981)), or from the reasonable inference that might be drawn from such evidence. Id. at 337 (quoting Guardino v. Department of SocialWelfare, 122 R.I. 583, 588-89, 410 A.2d 425, 428 (1980)). Additionally, questions of law are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts.Narragansett Wire Co. v. Norberg, 376 A.2d 1, 16 (R.I. 1977); Bunch, 690 A.2d. at 337.
 STATUTORY AUTHORITY TO ISSUE THE EMERGENCY ORDER
In their brief to this Court, the Appellants contend that the Director of the Department exceeded the Department's statutory authority pursuant to G.L. § 7-11-712 by issuing the Emergency Order in this case. As this issue was not raised during the administrative proceeding and is not contained in the record below, this Court need not consider this issue. General Laws § 42-35-15(f). However, since the Director of the Department, pursuant to § 7-11-712, possesses the authority to issue the Emergency Order, the Appellants argument is without merit.
 NOTICE OF THE EMERGENCY ORDER
The Appellants argue that the manner in which the Department served notice of the Emergency Order was in violation of the Due Process Clauses of the United States and Rhode Island Constitutions. Specifically, the Appellants argue that the Department failed to give them proper notice of the Emergency Order, causing a default judgment to be entered against them in violation of their due process rights.
The Director of the Department derives statutory authority to issue an emergency order pursuant to G.L. § 7-11-712. General Laws §7-11-712 provides in pertinent part: "(a) the director may use emergency administrative proceedings in a situation involving an immediate danger to the public welfare requiring immediate action." In the instant case the Director issued an Emergency Order to stop the Appellants, who were allegedly dealing in unregistered securities, from defrauding the citizens of Rhode Island. (See Brief of the Rhode Island Department of Business Regulation at 4-6.) The record reflects that the Director had credible information from a group of investors that they had invested in Total Health Care and were allegedly being defrauded.[4]
The Department served the Appellants notice of the Emergency Order by certified and regular mail on October 26, 2000. General Laws §7-11-712(d)(1) provides that, "[t]he Director shall give notice that is practicable to persons who are required to comply with the order." (Emphasis added).[5] Furthermore, the term "practicable" is defined as "reasonably capable of being accomplished; feasible." See Black's LawDictionary 1191 (6th ed. 1999). The term "practicable" has been construed by our Supreme Court, in the context of notice requirements in insurance policies, to mean that the person charged with giving notice must act with diligence and reasonableness in light of all the circumstances of the particular case. See Pickering v. American Employers Insurance Co.,109 R.I. 143, 153, 282 A.2d 584, 594 (1971); Cinq-Mars v. The TravelersInsurance Co., 100 R.I. 603, 609, 218 A.2d 467, 473 (1971). The Director fulfilled her statutory obligation of giving practicable notice by mailing notice to the Appellants at their last known address filed with the Florida Secretary of State's Office.
It should be noted that the Director, although she was not statutorily required to do so, served the Appellants under the stricter general notice provisions contained in G.L. § 7-11-708. General Law §7-11-708(e) provides in pertinent part that:
 (1) The plaintiff, who may be the director, promptly sends notice of the service and a copy of the process by registered or certified mail, return receipt requested, to the defendant or respondent at the address stated in the consent to service of process or, if no consent to service of process has been filed, at the last known address or takes other steps which are reasonably calculated to give actual notice. . . ." (Emphasis added.)
It is well established that notice by certified and regular mail meets the requirements of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, as well as the due process provisions of the Rhode Island Constitution. See Mennonite Board of Missions v. Adams,
462, U.S. 791 (1983) (holding that mailed notice meets the requirements of the Due Process Clause of the Fourteenth Amendment); Quinn Trust v.Emil Ruiz, 723 A.2d 1127, 129 (R.I. 1999) (holding that mail or personal service must be rendered to interested parties in order for Due Process demands to be met). Here, the Director met the standard of notice set forth in G.L. § 7-11-712 and § 7-11-708(e) by mailing notice to the Appellants at their last known address using certified and regular mail. The Decision of the Department did not prejudice the substantive due process rights of the Appellants.
 ADEQUACY OF THE SERVICE OF PROCESS
The Appellants further set forth several arguments alleging the defectiveness of the service by certified and regular mail which deprived them of their due process rights. The Appellants first argue that the address used by the Department — 7125 Southwest 111 Court, Miami, Florida 33173 (Old Address) — was not the current address of Total Health Care or the Appellants. The Appellants contend that the corporation moved its headquarters to 16300 N.E. 19th Avenue, Suite 109, North Miami Beach, FL 33162 (New Address), in August 1999, several months before the Department served them at the Old Address on October 30, 2000. Furthermore, the Appellants argue that the Department had notice of another address (not the New or Old Addresses) — 9817 S.W. 111th Terrace, Miami, FL 33176 — for Total Health Care. This address is a five bedroom, four bathroom, 4972 square foot single-family residence with a pool. (See Decision at 5).
Hearing Officer reviewed evidence from the Department and the Appellants as to the effectiveness of the Department's using the Old Address to serve notice on the Appellants. The Hearing Officer concluded that, "[t]he Department ascertained the address on file for Respondent Total Health Care and its principals from the Office of the Florida Secretary of State as evidenced in the annual reports filed by the corporation on July 29, 1998, February 24, 1999, and February 2, 2000." (See Decision at 11). The record also revealed that Total Health Care did not change its address with the Secretary of State's Office until March 9, 2001, over four months after having been served with the Emergency Order and nineteen months after allegedly vacating the Old Address. Id.
at 8. Furthermore, the record contains a February 2000 annual report which was filed with the Florida Division of Corporations listing the Old Address as the address of record for Appellant Silverman and Total Health in contradiction to Appellant Silverman's affidavit that Total Health Care vacated the Old Address in August 1999. Id. at 9. filing of incorrect information with the Florida Secretary of State is a violation of the Florida Business Corporation Act. (Fla. Stat. § 607.) Specifically, the Appellants violated § 607.1622, which mandates that, "[i]nformation in the annual report must be current as of the date the annual report is executed on behalf of the corporation." Fla. Stat. Ann. § 607.1622(6). If indeed the Appellants and Total Health Care had vacated the Old Address and were conducting business at a new address, they had a statutory obligation to change their address at the Florida Secretary of State's Office so that the public would have a way to contact them. This record reflects that the Department would have been ineffective in its service of notice if it had not used the official address listed with the Florida Secretary of State's Office as the last known address of the Appellants. The Department's sending the notice to the appropriate address, which was obtained from the Florida Secretary of State's Office, was not in violation of statutory provisions.
The Appellants further argue that the service was ineffective to give them notice of the Emergency Order because the individual, Paola Perez, who signed for the certified mail, was unauthorized to accept service for the corporation or the Appellants. The Hearing Officer reviewed evidence which indicated that Ms. Perez had an interest in the property where the notice was sent since 1993 and during the same time that the Appellants were conducting business at that address. (See Decision at 11.)[6] The record reflects that the notice sent in the regular mail was not returned to the Department which would have indicated to the Department that the Appellants were no longer receiving mail at the Old Address. The Hearing Officer also had before her evidence that Ms. Perez was not a stranger to Total Health or the Appellants. Id. at 6. The record includes a Quitclaim Deed dated June 28, 2001, between Appellant Silverman and Ms. Perez, which transferred Mr. Silverman's interest in the Old Address to Ms. Perez for the nominal fee of ten (10) dollars. This Court finds that the Hearing Officer had reliable, probative, and substantial evidence before her to conclude that Ms. Perez would forward the mail to the Appellants.Id.
The Appellants also argue that they should have received individual notices at their homes or new places of business. Further, they argue that some of them were not associated with Total Health Care at the time that the Department served notice. These arguments are without merit because the issue before the Hearing Officer was not whether the Appellants were associated with Total Health Care at the time when the notice was served, but whether the Appellants were associated with Total Health at the time of the alleged misrepresentations.
The Hearing officer was presented with probative evidence that Appellants were associated with Total Health Care when the alleged misrepresentations took place and that they were served in their capacities as employees or principals of Total Health Care. The record reflects that Appellant Silverman was listed as a consultant to the Total Health Care in a "Covenant for C.O.R.F. Consulting Services" signed on December 5, 1999. (See Decision at 7.) The record also reflects that Appellant Barbach executed an amendment to Total Health Care's certificate of incorporation on April 23, 1999. Id. Lastly, evidence was presented showing that Appellant Koslow contacted investors, through counsel, as a principal in Total Health Care. Id. The Hearing Officer found that:
 "[t]he individual Respondents . . . represented themselves as principals of Total Health Care through corporate documents, contracts and/or correspondence with the Investors in a manner which made it reasonable for the Investors to assume that the individual Respondents could be contacted at the address listed in the corporate documents filed with the Florida Secretary of State." Id. at 12. Said finding was not clearly erroneous.
 ACTUAL NOTICE
Additionally, the Appellants argue that they had no actual notice of the Emergency Order until December 2000, a month after the default had been entered against them on November 27, 2000. The Department maintains that the Hearing Officer heard evidence from several sources as to the validity of this claim. The Hearing Officer concluded that:
"An affidavit submitted by Rhode Island attorney, Neal Haber, indicates and supports Investors' contention that the Respondents had actual notice of the Emergency Order within thirty (30) days from the issuance of the Emergency Order. Attorney Haber's affidavit indicates that on November 6, 2000, approximately one week after receipt of the envelopes at the service address, the Old Address, Attorney Haber had a conversation with Respondent Steven Waldman, Esq. (See Decision at 9)." The Appellant's own affidavits reveal that they waited three months after they became aware of the default judgment before they responded with a Petition to Vacate Default. (See Decision at 12.) Furthermore, the investors and the Department had been led to believe that Steven Waldman was acting as counsel for Total Health. This Court is satisfied that the Appellants had actual notice of the Emergency Order and were afforded an opportunity to exercise their due process rights in a timely manner. For the foregoing reasons, the Hearing Officer's finding that the Appellants had received actual notice of the Emergency Order well before the default judgment entered was not clearly erroneous.
The Decision of the Department was not in violation of constitutional due process rights of the Appellants.
 ENTRY OF DEFAULT ORDER
Additionally, the Appellants argue in their memoranda that their Due Process rights were violated when the Department prematurely deemed the Emergency Order permanent. This argument, was not set forth in the record before the Hearing Officer.
At the core of the Appellant's argument that the default judgment was entered prematurely is G.L. § 7-11-712(d)(1)(ii). General Laws §7-11-712(d)(1)(ii) provides in pertinent part, ". . .[i]f no hearing is requested and none is ordered by the director, the order becomes permanent on the thirtieth (30th) day after its entry and remains in effect unless or until it is modified by the director." The Emergency Order was entered on October 26, 2000 and became final by operation of law thirty days later. Thirty days from October 26, 2000 is November 25, 2000. However, since November 25, 2000 was a Saturday, the default would not have entered until the next business day, Monday,
November 27, 2000, pursuant to Super. Ct. R.Civ.P. 6(a). The Hearing Officer, in her
Decision and Findings of Fact, incorrectly deemed the Emergency Order final twenty-nine days from its issuance on November 24, 2000.[7] The Appellants argue post facto that by deeming the Emergency Order as Final three days early, the Department deprived them of their right to request a hearing on the matter and thus violated their due process rights as guaranteed by the United States and Rhode Island Constitutions.
The Appellants' argument that they were prejudiced by a premature entry of the default judgment is without merit because the order was to become effective by operation of law, not by the determination of the Department. Even if the Department had the intention of entering the default early, they were prohibited from doing so by statute. See
G.L. § 7-11-712.[8] There is no indication in the record that the Department entered a final order on the docket on the incorrect date. The source of the incorrect date is the Decision of the Hearing Officer dated October 4, 2001, almost a year after the order became final by operation of law. If the Appellants had gone to the Department on October 24, 2000, they would have been able to request a hearing because the Department would not have yet deemed the Emergency order final.[9]
This matter was not argued on the record during the administrative hearing because it was not an issue until the Hearing Officer entered her Decision after the hearing. Since the Hearing Officer was the person who incorrectly deemed the Emergency Order final three days early, and she was not appointed to the case until April 13, 2001, the Appellants cannot claim that they were prejudiced by a premature entry.
Even assuming, arguendo, that the Emergency Order was deemed final prematurely, the Appellants' argument is still without merit because by their own admission, they did not learn of the Emergency Order until some time in December 2000, a month after the Emergency Order was prematurely deemed final. (See Decision at 13.)
The only way that the Appellants could have been prejudiced by a premature entry is if they had notice of the Emergency Order before the default entered, which they contend was not the case. The Decision of the Hearing Officer did not prejudice the substantial due process rights of the Appellants.
CONCLUSION
After a thorough review of the entire record in this matter, this Court finds that the Department's Decision is supported by substantial, reliable, and probative evidence and was not made upon unlawful procedure or in violation of constitutional or statutory provisions, or affected by other error of law. Substantial rights of the petitioners have not been prejudiced. Accordingly, the October 4, 2001 Decisions of the Department of Business Regulation are affirmed. Counsel shall submit the appropriate judgment for entry.
[1] Total Health Care Consulting, Inc., Loren Friedman, and Steve Waldman are not parties to this appeal.
[2] The Hearing Officer inaccurately listed November 24, 2000 as the date that the Emergency Order became permanent by operation of law. Thirty days from October 26, 2000 would be November 25, 2000. Since November 25, 2000 was a Saturday, the Emergency Order did not become permanent until the following business day, November 27, 2000, pursuant to Super. Ct. R.Civ.P. 6(a).
[3] Mark A. Silverman filed separate motions from Brian Koslow and Lee Barbach.
[4] The record indicates that the investors who sought protection from the Department claimed that they had been defrauded of approximately $400,000. Some of these investors were in there 70s.
[5] Practicable, adj. (of a thing) reasonably capable of being accomplished; feasible. See Black's Law Dictionary 1191 (6th ed. 1999).
[6] It is interesting to note that the address in which Total Health and Ms. Perez simultaneously listed as their corporate addresses is a 1480 sq. ft. three bedroom condominium.
[7] The Decision is replete with inaccurate dates. In the Findings of Fact section, the Hearing Officer inaccurately stated that the Emergency Order was mailed on October 25, 2000, which is one day before its issuance, instead of the correct date, October 26, 2000. The Decision mistakenly uses the date(s) that the Appellants were served and the default was entered as 10/25/01 and 11/24/01 respectively. However, the correct dates are 10/26/00 and 11/27/00. (See Decision at 12.) Yet again, the Hearing Officer mistakenly uses November 26, 2001 as the date in which the Emergency Order became final instead of the correct date, November 27, 2000. (See Decision at 13.) These seem to be typographical mistakes that arguably confuse the reader but do not affect the merits of the Decision or prejudice substantial rights of the Appellants.
[8] Black's Law Dictionary defines "operation of law" as the means by which a right or liability is created for a party regardless of the party's actual intent. (i.e. because the court didn't rule on the motion for rehearing within 30 days, it was overruled by operation of law). See Black's Law Dictionary 1119 (6th ed. 1999). 
[9] In all of the pleadings, the Director of the Department lists October 25, 2000, thirty days after entering the Emergency Order, as the date that the order became final. The Department maintains that the Appellants would have been able to request a hearing on October 24, 2000.