**Supreme Court**

No. 2014-303-Appeal.
(PC 08-7136)
(Dissent begins on page 9)

Patricia Botelho et al.                    :

                    v.                      :

City of Pawtucket School Department et al.  :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2014-303-Appeal.
(PC 08-7136)
(Dissent begins on page 9)

Patricia Botelho et al.          :

v.                               :

City of Pawtucket School Department et al.     :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  The City of Pawtucket, its school department, and

its school committee (collectively, defendants)[1] appeal from a grant of summary judgment in

favor of the plaintiffs,[2] sixteen retirees from nonteaching union positions with the school

department.  The plaintiffs had sought reimbursement of the health insurance co-payments that

they paid after the defendants allegedly breached a series of collective-bargaining agreements

(CBAs).  This case came before the Supreme Court pursuant to an order directing the parties to

appear and show cause why the issue raised in this appeal should not be summarily decided.

After considering the parties' written and oral submissions and reviewing the record, we

conclude that cause has not been shown and that this case may be decided without further

---

[1] The City of Pawtucket School Department was named a defendant by and through its superintendent, Patricia DiCenso; the Pawtucket School Committee was named a defendant by and through its members Michael Araujo, Gerard Charbonneau, Katherine McQuade, Kimberly Grant, Joseph Knight, and Erin Dube; and the City of Pawtucket was named a defendant by and through its finance director, Ronald F. Wunschel.

[2] The sixteen plaintiffs were: Patricia Botelho, Walter Byrnes, Joan Calabro, Karen Carrell, Matilda Correia, Mary Jane Dion, Diane Drywa, Dolores Flanagan, Margaret Garant, Estelle Petit, Linda Ruddy, Louise Shea, Margaret Silva, Beverly Walsh, Glenn Watson, and Mary Ellen Zuba.

briefing or argument. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

# I

## Facts and Travel

Each of the sixteen plaintiffs in this case was a member of Rhode Island Council 94, A.F.S.C.M.E., AFL-CIO, Local 1352 (union), and retired between 1999 and 2007 after having rendered at least fifteen years of service to the school department. At the time of each plaintiff's retirement, a CBA was in place between the union and the school committee. Because the sixteen plaintiffs retired over a period of eight years, they retired while four different CBAs were in effect.[3] The health insurance benefits were provided in Article 19, and these benefits did not change from one CBA to the next. Article 19.5 of each CBA stated, in its entirety:

> "Upon retirement, an employee who has reached the age of fifty-eight (58) years or more, and has been a member of the Pawtucket School Department staff fifteen (15) years or more shall receive Family coverage under Blue Cross/Blue Shield and Delta Dental plans. This benefit shall extend until the retired employee is eligible for coverage under Medicare."

Until August 2007, plaintiffs were not required to contribute any co-payments related to their health insurance benefits. Individuals who were actively employed by the school department also received fully-paid health insurance until August 2007, when an arbitrator ruled that active nonteaching employees should contribute to the cost of the health insurance policies. An arbitrator had been brought in to resolve an impasse that had been reached during the negotiations between the union and the school department for the CBA covering the period from

---

[3] The collective bargaining agreement (CBA) in effect when the first plaintiff retired covered July 1, 1999 to June 30, 2002. The next CBA was in effect from July 1, 2002 to June 30, 2004, the next CBA from July 1, 2004 to December 31, 2005, and the final CBA was in effect from January 1, 2006 to June 30, 2007.

July 1, 2007 to June 30, 2010 (2007-2010 CBA). Article 19 of 2007-2010 CBA contained a new provision; pursuant to Article 19.10, "bargaining unit employees" were required to contribute co-payments toward their health and dental insurance. Article 19.5 remained the same in the 2007-2010 CBA, but the school department began billing plaintiffs for health insurance co-payments, and at least ten plaintiffs paid the co-payments billed to them.

The plaintiffs filed a complaint in Superior Court on November 12, 2008, seeking a declaratory judgment pursuant to G.L. 1956 chapter 30 of title 9 that: (1) they were entitled to free health insurance coverage until eligible for Medicare pursuant to the CBA that was in effect at the time of each plaintiff's respective retirement, (2) defendants breached the CBAs by requiring plaintiffs to contribute to the cost of the health insurance coverage, and (3) defendants were obligated to reimburse plaintiffs for all co-payments paid since August 2007 (collectively, count 1). The complaint also set forth a count for breach of contract, seeking damages in the amount of the co-payments each plaintiff had paid since August 2007 (count 2) and a count for promissory estoppel (count 3).[4] After the parties submitted memoranda of law addressing plaintiffs' request for a declaratory judgment, a hearing justice of the Superior Court issued a decision in April 2010 declaring that "[p]laintiff[s'] rights to retiree health insurance benefits vested under the terms of the CBA in effect at the time of each individual's retirement." In light of the record before him, however, the hearing justice declined to declare that defendants had breached the CBAs when they billed plaintiffs for the co-payments.

Thereafter, plaintiffs filed a motion for summary judgment on their claims for declaratory judgment and breach of contract, and included, inter alia, a copy of each complete CBA in effect

---

[4] The complaint named only the City of Pawtucket School Department (by and through its superintendent) and the school committee (by and through its members) as defendants, but was later amended to include defendant City of Pawtucket (by and through its finance director). The allegations and claims in the amended complaint remained the same as in the original complaint.

- 3 -

when each plaintiff retired as exhibits in support of their motion. The defendants objected to plaintiffs' motion and filed a cross-motion for summary judgment. A second hearing justice of the Superior Court rendered a decision on January 5, 2012, concluding that the CBAs unambiguously provided plaintiffs with free health and dental insurance as offered at the time of each plaintiff's respective retirement until each plaintiff reached the age of eligibility for Medicare. The hearing justice granted plaintiffs' motion, denied defendants' cross-motion, and ordered a future hearing to assess plaintiffs' damages. The parties subsequently entered a stipulation regarding the assessment of damages for each plaintiff. Soon thereafter, plaintiffs filed a motion seeking a supplemental order from the court that enjoined defendants from requiring any further payments from them for the maintenance of their health insurance benefits. The court granted plaintiffs' motion. Final judgment entered in favor of plaintiffs on September 2, 2014 on their motions for: (1) summary judgment on the breach of contract and declaratory judgment claims, (2) assessment of damages, and (3) injunctive relief.[5] The defendants timely appealed from the portion of the judgment granting plaintiffs' motion for summary judgment.

## II

### Standard of Review

"The grant of a motion for summary judgment is reviewed by this Court de novo, employing the same standards and rules used by the hearing justice." The Law Firm of Thomas A. Tarro, III v. Checrallah, 60 A.3d 598, 601 (R.I. 2013) (quoting Great American E & S Insurance Co. v. End Zone Pub & Grill of Narragansett, Inc., 45 A.3d 571, 574 (R.I. 2012)). "It is a fundamental principle that [s]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." Id. (quoting Employers Mutual Casualty

---

[5] The final judgment also stated that plaintiffs had dismissed their claim for promissory estoppel.

<u>Co. v. Arbella Protection Insurance Co.</u>, 24 A.3d 544, 553 (R.I. 2011)). "We will affirm a lower court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." <u>Id.</u> (quoting <u>Great American E & S Insurance Co.</u>, 45 A.3d at 574). "[T]he nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." <u>Id.</u> (quoting <u>Great American E & S Insurance Co.</u>, 45 A.3d at 574).

### III

### Discussion

Our analysis of a CBA "is guided by long-established rules of contract interpretation." <u>State v. Rhode Island Employment Security Alliance, Local 401, SEIU, AFL-CIO</u>, 840 A.2d 1093, 1096 (R.I. 2003). "The determination of whether a contract's terms are ambiguous is a question of law to be decided by the court." <u>JPL Livery Services, Inc. v. Rhode Island Department of Administration</u>, 88 A.3d 1134, 1142 (R.I. 2014). We review questions of law <u>de novo</u>. <u>Id.</u> A term in a contract is ambiguous when it is "reasonably and clearly susceptible to more than one rational interpretation." <u>Miller v. Saunders</u>, 80 A.3d 44, 49 (R.I. 2013) (quoting <u>DiPaola v. DiPaola</u>, 16 A.3d 571, 576 (R.I. 2011)). In determining whether language in a contract is ambiguous, "we give words their plain, ordinary, and usual meaning. * * * The subjective intent of the parties may not properly be considered by the Court; rather, we consider the intent expressed by the language of the contract." <u>JPL Livery Services, Inc.</u>, 88 A.3d at 1142 (quoting <u>Furtado v. Goncalves</u>, 63 A.3d 533, 537 (R.I. 2013)). "[I]n situations in which the language of a contractual agreement is plain and unambiguous, its meaning should be determined

without reference to extrinsic facts or aids." Id. (quoting Furtado, 63 A.3d at 537). However, "[w]hen reviewing contracts, it is clear that this Court 'should not * * * stretch its imagination in order to read ambiguity into a [contract] where none is present.'" City of East Providence v. United Steelworkers of America, Local 15509, 925 A.2d 246, 251-52 (R.I. 2007) (quoting Garden City Treatment Center, Inc. v. Coordinated Health Partners, Inc., 852 A.2d 535, 542 (R.I. 2004)).

In the case at bar, each CBA in effect at the time of plaintiffs' individual retirement dates contained the identical Article 19 entitled "Medical Insurance." The plain and unambiguous language of Article 19.5 provided that employees "shall receive [f]amily coverage under Blue Cross/Blue Shield and Delta Dental plans" starting when the employee retired and continuing until the retired employee was eligible for Medicare, as long as the employee was at least fifty-eight years old at the time of retirement and had been "a member of the Pawtucket School Department staff" for at least fifteen years. That plaintiffs received this benefit at no cost to them until August 2007 is an undisputed fact. Article 19.5, however, does not contain any language to indicate whether this was a benefit to which retirees were expected to contribute a co-payment if requested, or whether the benefit was intended to provide retirees with free health insurance until they became eligible for Medicare.

In plaintiffs' memorandum of law in support of their motion for summary judgment, they argued that the absence of language in Article 19 indicating that the terms of retiree benefits could change to match a negotiated or arbitrated change to the terms of the active employees' benefits unambiguously meant that plaintiffs were entitled to free health insurance upon meeting the conditions in Article 19.5. In support of their argument, plaintiffs provided eleven affidavits attesting to the understanding by ten plaintiffs and the union's business agent that the benefits

- 6 -

were intended to be provided to retirees at no cost, and had been provided at no cost until August 2007. In defendants' memorandum of law in opposition to the motion for summary judgment, they argued that the CBAs had not promised plaintiffs free health insurance upon retirement and that past practice demonstrated that retirees were simply entitled to receive benefits according to the same terms as the benefits for active employees. In support of their argument, defendants provided two affidavits from Thomas Conlon, the longtime business administrator for the Pawtucket School Department. Mr. Conlon averred that, from 1996 to 2007, retirees had been permitted to participate in the same health insurance plans offered to the active employees, including plans from companies other than Blue Cross/Blue Shield (e.g., United Health). Mr. Conlon also averred that neither the union nor the school department ever expressed an intent to provide retirees with free medical benefits, but also that, to the best of his recollection, the issue of co-payment had not arisen during negotiations. Since the language of Article 19.5 is silent with respect to whether retirees were to be provided with free health insurance benefits or were expected to pay a co-payment for the benefit, coupled with evidence that the benefits actually provided to plaintiffs did not follow Article 19.5 to the letter, we conclude that Article 19 is "reasonably and clearly susceptible to more than one rational interpretation," and is, therefore, ambiguous. Miller, 80 A.3d at 49 (quoting DiPaola, 16 A.3d at 576).

"[A]lthough contract interpretation is a question of law, when the contract terms are ambiguous, interpretation of the terms becomes a question of fact." Inland American Retail Management LLC v. Cinemaworld of Florida, Inc., 68 A.3d 457, 464 (R.I. 2013). We have often recognized that "[a]n ambiguity in a contract cannot be resolved on summary judgment." Garden City Treatment Center, Inc., 852 A.2d at 541 (quoting Rubery v. Downing Corp., 760 A.2d 945, 947 (R.I. 2000)); see also Rotelli v. Catanzaro, 686 A.2d 91, 95 (R.I. 1996). "When a

- 7 -

contract is ambiguous, and the pleadings, discovery materials, and affidavits indicate a dispute in respect to the parties' intent, there exists a genuine issue of material fact that must be resolved by the trier of fact." Rotelli, 686 A.2d at 95. For example, "[i]f the affidavit of [a] nonmoving party alleges facts that, if believed, would constitute a valid defense, the affidavit must be taken as true and the motion denied." Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp., 994 A.2d 54, 57 (R.I. 2010) (quoting Rotelli, 686 A.2d at 93).

After considering the affidavits that both parties submitted with their memoranda in support of their respective positions on the cross-motions for summary judgment, it is apparent that the union and the school committee, as the parties to the CBAs, had conflicting intents with respect to the level of payment expected from retirees for the health insurance benefits. It is our opinion, therefore, that an issue of material fact exists regarding whether the defendants breached the CBAs when they billed the plaintiffs in 2007 for the health insurance co-payments. See Inland American Retail Management LLC, 68 A.3d at 465 ("summary judgment is inappropriate where references to extrinsic evidence and the surrounding circumstances must be relied on to discern the intent of the contracting parties"). Since "[t]he purpose of the summary-judgment procedure is to identify disputed issues of fact necessitating trial, [and] not to resolve such issues," the issue of material fact in this case should have precluded the grant of summary judgment in favor of the plaintiffs. See Plainfield Pike Gas & Convenience, LLC, 994 A.2d at 58 (quoting Rotelli, 686 A.2d at 93).

**Conclusion**

For the reasons stated herein, we vacate the judgment entered in favor of the plaintiffs and remand this case to the Superior Court to conduct further proceedings consistent herewith.

**Justice Robinson, dissenting.**  I dissent; I do so respectfully, but nonetheless most vigorously.  I am entirely unable to reconcile the holding of the majority with fundamental principles of the Anglo-American law of contracts.  The agreement before us is, in my judgment, completely clear and totally unambiguous.  As such, I read it as imposing absolutely no co-payment requirement on the retirees who are the plaintiffs in this lawsuit.

Upon perusing the majority's opinion, it quickly became clear to me that the underlying premise of the majority's reasoning is that silence connotes ambiguity.  However, there is no warrant in our law for saying that silence somehow creates ambiguity in a case such as the one presently before us.  I am not aware of any opinion from this Court that stands for such a proposition, but I am aware that there is explicit language in cases from other jurisdictions that rejects that notion.  See, e.g., Consolidated Bearings Co. v. Ehret-Krohn Corp., 913 F.2d 1224, 1233 (7th Cir. 1990) ("Silence creates ambiguity * * * only when the silence involves a matter naturally within the scope of the contract as written.  A contract is not ambiguous merely because it fails to address some contingency; the general presumption is that the rights of the parties are limited to the terms expressed in the contract.") (internal quotation marks omitted); Nissho Iwai Europe PLC v. Korea First Bank, 782 N.E.2d 55, 60 (N.Y. 2002) ("[A]mbiguity does not arise from silence, but from what was written so blindly and imperfectly that its

meaning is doubtful.") (internal quotation marks omitted).[1]  Accordingly, I am simply unable to reconcile the majority's approach with settled principles of the law of contracts.  We are not confronted with a case where the maxim of "necessary implication" applies.  The agreement at issue is fully self-explanatory in and of itself.  It says what it says; and, it says nothing about a co-payment.

Since I consider the agreement at issue to be unambiguous, I next turn to one of the most basic principles of contract law which has been summarized as follows: "Under established contract law principles, when there is an unambiguous contract and no proof of duress or the like, the terms of the contract are to be applied as written."  Gorman v. Gorman, 883 A.2d 732, 739 n.11 (R.I. 2005) (emphasis added); see also Rivera v. Gagnon, 847 A.2d 280, 284 (R.I. 2004).  When the terms of the contract at issue are applied as written, it is immediately clear that there is no requirement that plaintiffs pay a co-payment for their medical care.

The City of Pawtucket may have belatedly come to believe that its agreement with the retirees was overly generous.  But the demotic saying that "a deal is a deal" is plainly applicable in such a situation.  As this Court has declared: "It is a basic tenet of contract law that the contracting parties can make as 'good a deal or as bad a deal' as they see fit * * *."  Rodrigues v. DePasquale Building and Realty Co., 926 A.2d 616, 624 (R.I. 2007) (quoting Durfee v. Ocean State Steel, Inc., 636 A.2d 698, 703 (R.I. 1994)); see Grady v. Grady, 504 A.2d 444, 447 (R.I. 1986) ("That a contract's performance becomes more difficult or expensive than originally

---

[1]     It should be borne in mind that we are not confronted with something entirely extraneous to what was agreed to (e.g., whether payment should be made in cash or by check).  Rather the co-payment provision materially adds to the financial burden on the retirees; the change from no co-payment to the requirement that they make a co-payment constitutes a new contractual term that was never the subject of bargaining.

anticipated does not justify setting it aside."); see also Mansolillo v. Employee Retirement Board of Providence, 668 A.2d 313, 317 (R.I. 1995).

For the reasons stated herein, I would affirm the judgment of the Superior Court. Accordingly, I must record my respectful but forceful dissent with respect to the majority's opinion in this case.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** Patricia Botelho et al. v. City of Pawtucket School Department et al.

**CASE NO:** No. 2014-303-Appeal.
(PC 08-7136)

**COURT:** Supreme Court

**DATE OPINION FILED:** January 13, 2016

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Sarah Taft-Carter

**ATTORNEYS ON APPEAL:**

For Plaintiffs: Carly B. Iafrate, Esq.
Gerard P. Cobleigh, Esq.

For Defendants: Jon M. Anderson, Esq.
Frank J. Milos, Jr., Esq.
Stephen M. Robinson, Esq.
Vicki J. Bejma, Esq.