June 2, 2020

Cesar A. Woel                    :

v.                               :

Christiana Trust, as Trustee for Stanwich    :
Mortgage Loan Trust Series 2017-17, et al.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at (401) 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Cesar A. Woel                    :

v.                               :

Christiana Trust, as Trustee for Stanwich    :
Mortgage Loan Trust Series 2017-17, et al.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.** The plaintiff, Cesar Woel, appeals from a Superior

Court order dismissing his complaint against the defendants, Christiana Trust, as Trustee for

Stanwich Mortgage Loan Trust Series 2017-17, and Selene Finance (collectively defendants),

and declaring that a foreclosure sale of the plaintiff's property was valid. The plaintiff argues

that the foreclosure sale is void because the notice of default sent to him by the defendants failed

to comply with the terms of the mortgage. Because we agree with this contention, we vacate the

order of the Superior Court.

### Facts and Travel

The plaintiff purchased the property located at 152 Waldo Street in Providence in 2007.

The plaintiff granted a mortgage on the property to Bank of America, N.A., to secure a $310,000

loan.[1] Bank of America later assigned the mortgage to Christiana Trust. Selene Finance acted as

---

[1] The plaintiff's mortgage was documented on the standard form mortgage provided by the
Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage
Corporation (Freddie Mac). The standard form mortgage contains several uniform covenants

the servicer for the loan.  Two provisions in plaintiff's mortgage are pertinent to this appeal: paragraph 19 and paragraph 22.

Paragraph 22 of plaintiff's mortgage, entitled "Acceleration; Remedies[,]" is a nonuniform covenant developed for Rhode Island mortgages.[2]  According to paragraph 22, in the

---

that are applicable in every state, as well as nonuniform covenants that are designed for nonjudicial foreclosure states such as Rhode Island and Massachusetts. *See Pinti v. Emigrant Mortgage Company, Inc.*, 33 N.E.3d 1213, 1221 n.16 (Mass. 2015).

[2] Paragraph 22 of the mortgage provides, in full:

> "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument * * *.  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

> "If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15.  Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law.  Lender or its designee may purchase the Property at any sale.  The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it."

event of a default, the mortgagee must provide notice of default to the mortgagor *before* accelerating the note and conducting a foreclosure sale. Paragraph 22 also sets out certain information that must be included in the notice. Under paragraph 22, the notice of default must inform the mortgagor of:

> (1) the default;
>
> (2) the action required to cure the default;
>
> (3) the date by which the default must be cured;
>
> (4) the fact that failure to cure the default by that date may result in acceleration of the loan and sale of the property;
>
> (5) "*the right to reinstate after acceleration*" (emphasis added); and
>
> (6) the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale.

Significantly, paragraph 22 mandates that the mortgagor be informed of the right to reinstate the mortgage after acceleration which, when accomplished, returns the mortgage to its pre-acceleration status and the monthly payments under the note.

Paragraph 19 of the mortgage, entitled "Borrower's Right to Reinstate After Acceleration[,]" sets out the conditions that must be satisfied to reinstate the mortgage after acceleration.[3] Under paragraph 19, the borrower may reinstate the mortgage prior to the earliest

---

[3] Paragraph 19 provides:

> "If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration

of: (1) "five days before sale of the Property pursuant to any power of sale contained in this Security Instrument;" (2) "such other period as Applicable Law might specify for the termination of Borrower's right to reinstate;" or (3) "entry of a judgment enforcing this Security Instrument." Paragraph 19 also sets out the following conditions that the mortgagor must satisfy in order to reinstate the mortgage after acceleration:

(1) pay the lender all sums due under the mortgage and the note as if no acceleration had occurred;

(2) cure any default of any other covenants or agreements;

(3) pay all expenses incurred in enforcing the mortgage—such as reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for purposes of protecting the lender's interest in the property; and

(4) take such action as reasonably required by the lender to assure that the lender's interest in the property and rights under the security instrument, and the borrower's obligation to pay the sums secured by the security instrument, will continue unchanged.

---

had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18."

Paragraph 19 further provides that "[u]pon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred."

In 2014, plaintiff became delinquent on the mortgage.[4]  On July 9, 2014, Selene Finance sent a notice of default and intent to accelerate to plaintiff.[5]  The notice informed plaintiff that

---

[4] At a Superior Court hearing in June 2018, plaintiff admitted that he had not paid the mortgage for several years; defendants asserted that plaintiff had not paid the mortgage since 2010.

[5] The notice of default and intent to accelerate provided, in pertinent part, as follows:

> "Selene Finance LP ('Selene'), on behalf of the owner and holder of your mortgage loan, and in accordance with the referenced Deed of Trust/Mortgage and applicable state laws, provides you with formal notice of the following:
>
> "The mortgage loan associated with the referenced Deed of Trust/Mortgage is in default for failure to pay amounts due.
>
> "*To cure this default*, you must pay all amounts due under the terms of your Note and Deed of Trust/Mortgage.  As of 07/09/2014 your loan is due for 01/01/2013 and the total amount necessary to cure your default is $33,209.94[.]
>
> "* * *
>
> "*If you have not cured the default within forty-five (45) [sic] of this notice, Selene will accelerate* the maturity date of the Note and declare all outstanding amounts under the Note immediately due and payable.  Your property that is collateral for the Note may then be scheduled for foreclosure in accordance with the terms of the Deed of Trust/Mortgage and applicable state laws.
>
> "The total amount you must pay to cure the default stated above must be received by 08/23/2014.
>
> "Note that between the date this letter was issued and 08/23/2014 additional regularly scheduled monthly payments, charges, costs and fees may become due.  For the exact amount you must pay to cure your default please contact our office[.]
>
> "* * *

the mortgage was in default "for failure to pay amounts due[,]" and it stated, "[t]o cure this default, you must pay all amounts due under the terms of your Note and Deed of Trust/Mortgage." The notice also informed plaintiff that he had forty-five days to cure the default, and of the specific date by which the default must be cured. Additionally, the notice informed plaintiff that, if he did not cure the default by that date, the mortgagee would accelerate the note and foreclose on the property. Finally, the notice declared: "You have the right to cure the default after acceleration and the right to bring a court action to claim that your loan is not in default or any other defense to acceleration and sale that you may have." The notice did not inform plaintiff that he had the right to reinstate the mortgage after acceleration.

After plaintiff failed to cure the default, Selene Finance sent a notice of acceleration to plaintiff on October 14, 2014. The plaintiff's property was sold at foreclosure sale on December 14, 2015. The plaintiff filed suit in Superior Court, alleging that the foreclosure sale was void because the default notice was deficient, and seeking a declaration that plaintiff was the owner of the property located at 152 Waldo Street.[6] The plaintiff's claims—as well as the issues on appeal—centered on whether the notice of default complied with paragraph 22. The plaintiff alleged that the foreclosure sale was void because he did not receive proper notice of default in accordance with paragraph 22. The plaintiff contended that the default notice failed to inform him of his right to reinstate after acceleration. Because the notice failed to inform him of his

> "*You have the right to cure the default after acceleration and the right to bring a court action to claim that your loan is not in default or any other defense to acceleration and sale that you may have.* This notice remains in effect until the default is cured."
> (Emphasis added.)

[6] The record reveals that a third party, Kaimanes Home Improvement, LLC, moved to intervene in the case, asserting that it had entered into a purchase and sale agreement with Christiana Trust for the property located at 152 Waldo Street and that the sale was thwarted by plaintiff's claims. The Superior Court heard and granted the motion to intervene on August 5, 2016, but an order was never entered, and Kaimanes Home Improvement is not listed as a party to this case.

right to reinstate the mortgage after acceleration as required by paragraph 22, plaintiff argued, the notice was insufficient, thus rendering the foreclosure sale void.

The defendants filed a motion to dismiss the complaint, which was later converted into a motion for summary judgment. On November 29, 2017, a justice of the Superior Court denied defendants' motion, concluding that questions of fact remained as to whether the default notice complied with paragraph 22 of the mortgage. The trial justice determined that the "right to reinstate after acceleration" is not equivalent to the "right to cure the default after acceleration[,]" because curing the default is only one of multiple steps that must be taken to reinstate after acceleration.

A few months later, defendants sought declaratory relief, contending that the default notice sent to plaintiff complied with the terms of the mortgage.[7] The plaintiff objected to that motion and filed a motion for summary judgment. On June 29, 2018, a second trial justice granted defendants' motion for a declaratory judgment and denied plaintiff's motion for summary judgment. The second trial justice ruled that the default notice complied with paragraph 22 because it informed plaintiff of the right to cure the default after acceleration and the failure to use the word "reinstate" in the default notice did not render it deficient. An order entered on August 21, 2018, dismissing plaintiff's complaint, declaring the foreclosure sale valid, and declaring Christiana Trust the valid owner of 152 Waldo Street; plaintiff filed a timely appeal.[8]

---

[7] Although this was characterized as a "Motion for Declaratory Judgment" under Rule 57 of the Superior Court Rules of Civil Procedure, there was no complaint or claims by defendants seeking declaratory relief pending before the court, but plaintiff failed to raise this to the attention of the trial justice. We therefore treat this as a motion for summary judgment.

[8] The plaintiff also sought emergency relief from this Court to prohibit defendants from evicting him from the property during the pendency of this appeal. This Court denied that request.

**Standard of Review**

This Court reviews a grant of summary judgment *de novo*. *Beacon Mutual Insurance Company v. Spino Brothers, Inc.*, 11 A.3d 645, 648 (R.I. 2011). "We view the evidence in the light most favorable to the nonmoving party; and, 'if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law,' we will affirm the judgment." *Allstate Insurance Company v. Ahlquist*, 59 A.3d 95, 97 (R.I. 2013) (brackets omitted) (quoting *Berman v. Sitrin*, 991 A.2d 1038, 1043 (R.I. 2010)).

**Analysis**

On appeal, plaintiff argues that the trial justice erred in denying his motion for summary judgment and in granting defendants' motion for a declaratory judgment because the default notice failed to strictly comply with the requirements contained in paragraph 22 as a condition precedent to a valid foreclosure sale. The plaintiff reasons that the default notice failed to strictly comply with paragraph 22 because it did not inform him of the right to reinstate after acceleration. The plaintiff therefore contends that the foreclosure sale is void.

The defendants counter that the trial justice correctly ruled that the default notice complied with paragraph 22 because informing plaintiff of "the right to cure the default after acceleration" was tantamount to informing him of "the right to reinstate after acceleration." The defendants reason that, under paragraph 19, curing the default was the only condition that plaintiff would have needed to satisfy in order to reinstate the mortgage after acceleration.

Because this case presents a matter of first impression, we must first determine the appropriate standard to apply.[9] In Rhode Island, upon default in the performance of the

---

[9] We acknowledge that the federal courts in Rhode Island have confronted this issue on numerous occasions. *See Aubee v. Selene Finance, LP*, C.A. No. 19-37WES, 2019 WL 7282019 (D.R.I. Dec. 27, 2019); *Martins v. Federal Housing Finance Agency*, 214 F. Supp. 3d 163

mortgage, a mortgagee may conduct a foreclosure sale of the property by exercising the statutory power of sale contained in G.L. 1956 § 34-11-22, so long as the mortgage contract itself gives the mortgagee the power to do so.[10] *See Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069, 1084 (R.I. 2013) ("[T]he right to exercise the power of sale in a mortgage is derived from contract, not statute."). "[W]hether a contract is clear and unambiguous is a question of law." *Beacon Mutual Insurance Company*, 11 A.3d at 648. "A term in a contract is ambiguous when it is reasonably and clearly susceptible to more than one rational interpretation." *Chariho Regional School District v. State*, 207 A.3d 1007, 1015 (R.I. 2019) (quoting *Botelho v. City of Pawtucket School Department*, 130 A.3d 172, 176 (R.I. 2016)). In evaluating whether contract language is ambiguous, "we give words their plain, ordinary, and usual meaning." *Id.* (quoting *Botelho*, 130 A.3d at 176). The Court considers "the intent expressed by the language of the contract[,]" but we do not consider the subjective intent of the parties. *Id.* (quoting *Botelho*, 130 A.3d at 176). If a contractual provision is ambiguous, "the construction of that provision is a question of fact." *Id.* (quoting *Haviland v. Simmons*, 45 A.3d 1246, 1259 (R.I. 2012)).

This Court has construed notice requirements contained in contracts as requiring strict compliance as a condition precedent. In *Cinq-Mars v. Travelers Insurance Company*, 100 R.I.

---

(D.R.I. 2016); *In re Demers*, 511 B.R. 233 (Bankr. D.R.I. 2014). Although this Court has not addressed the issue, the federal courts, when charged with applying Rhode Island law, have assumed that strict compliance with paragraph 22 is a condition precedent to a valid foreclosure sale. *See Aubee*, 2019 WL 7282019, at *4; *Martins*, 214 F. Supp. 3d at 169; *In re Demers*, 511 B.R. at 239. They were correct.

[10] This Court has recognized contractual power of sale since 1895, whereas the General Assembly enacted G.L. 1956 § 34-11-22 in 1927. *See Thurber v. Carpenter*, 18 R.I. 782, 784, 31 A. 5, 6 (1895); *see also Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069, 1085 (R.I. 2013). Because the right to exercise the power of sale is derived from the mortgage contract itself, a mortgage is not required to include the statutory power of sale provision contained in § 34-11-22, which merely provides that the provision "*may* be incorporated in any mortgage by reference[.]" *Bucci*, 68 A.3d at 1085 (quoting § 34-11-22).

- 9 -

603, 218 A.2d 467 (1966), we held that compliance with a notice provision contained in an insurance policy, which required the insured to provide the insurer with written notice of an accident "as soon as practicable[,]" was a condition precedent to the insurer's liability. *Cinq-Mars*, 100 R.I. at 610, 218 A.2d at 471 (quoting *Sherwood Ice Co. v. United States Casualty Co.*, 40 R.I. 268, 273, 100 A. 572, 574 (1917)); *see Hedco, LTD. v. Blanchette*, 763 A.2d 639, 642-43 (R.I. 2000) (holding that strict compliance with a notice of termination requirement contained in a federal regulation was a condition precedent to maintaining a trespass and eviction action against a tenant living in federally subsidized housing).

In this case, by assuming the mortgage contract from Bank of America, defendants were bound to comply with its terms. *See Martins v. Federal Housing Finance Agency*, 214 F. Supp. 3d 163, 169 (D.R.I. 2016) ("Simply put, if a mortgagee agrees to give a certain notice before a foreclosure, * * * [t]he mortgagee must do that which it agreed."); *In re Demers*, 511 B.R. 233, 238 (Bankr. D.R.I. 2014) ("[A] mortgagee has a duty to comply with the terms and conditions of the documents that it drafted."). Paragraph 22 of the mortgage contract clearly and unambiguously required that, "prior to acceleration[,]" the mortgagee must provide notice of default to the mortgagor and include certain information within that notice, including informing the mortgagor of "the right to reinstate after acceleration[.]" As a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale.

What is more, strict compliance with the notice requirements in a mortgage is especially important given that Rhode Island is a nonjudicial foreclosure state. Because mortgagees in Rhode Island may accelerate the mortgage and conduct a foreclosure sale without immediate judicial oversight, a strict compliance standard concerning the notice requirements prevents

- 10 -

mortgagees from accelerating and foreclosing without first providing a notice of default that adequately informs the mortgagor of his or her rights under the mortgage contract. Strict compliance with paragraph 22 is essential to ensuring that mortgagors are fully informed of their rights and will not be misled by a default notice provided by a mortgagee.[11]

Having determined the appropriate standard to apply in this case, we turn to whether the default notice strictly complied with paragraph 22 as a condition precedent to a valid foreclosure. Although we have not yet confronted this issue, the opinion of the Supreme Judicial Court of Massachusetts in *Pinti v. Emigrant Mortgage Company, Inc.*, 33 N.E.3d 1213 (Mass. 2015), is instructive. *See Pinti*, 33 N.E.3d at 1217-18. In *Pinti*, the notice of default provided that the mortgagor had "*the right to assert in any lawsuit for foreclosure and sale the nonexistence of a default or any other defense they may have to acceleration and foreclosure and sale*[.]" *Id.* at 1215-16 (brackets omitted). The issue was whether the notice of default strictly complied with paragraph 22 of the mortgage in that case, which mirrors that of plaintiff's mortgage in the present case. *Id.* at 1217. The court held that the notice failed to strictly comply with paragraph 22 because it did not inform the mortgagor of his or her "right, and need, to *initiate* a legal action if they seek to challenge the validity of the foreclosure." *Id.* at 1222-23. The court soundly reasoned that mortgagors could be misled into thinking that they had no need to initiate a lawsuit against the mortgagee and could instead advance a claim or defense in response to a lawsuit initiated by the mortgagee. *Id.* at 1222.[12]

---

[11] Other states, including Massachusetts, Alabama, and Minnesota, also require strict compliance with paragraph 22 as a condition precedent to a valid foreclosure. *See, e.g.*, *Ex parte Turner*, 254 So. 3d 207, 212 (Ala. 2017); *Pinti*, 33 N.E.3d at 1221 n.16; *Ruiz v. 1st Fidelity Loan Servicing, LLC*, 829 N.W.2d 53, 58 (Minn. 2013).

[12] The United States Court of Appeals for the First Circuit relied on *Pinti*, cited *supra*, in *Thompson v. JPMorgan Chase Bank, N.A.*, 915 F.3d 801 (1st Cir. 2019) (*Thompson I*).

In this case, the default notice failed to inform plaintiff of the right to reinstate the mortgage after acceleration. Paragraph 22 provides that the default notice "shall" inform plaintiff "of the *right to reinstate* after acceleration[.]" (Emphasis added.) The default notice in this case, however, provided: "You have the *right to cure* the default after acceleration[.]" (Emphasis added.) These terms are not synonyms; yet a fair reading of the default notice suggests that, if plaintiff cured the default after acceleration, the mortgage would be reinstated. This is misleading, inaccurate, and, at best, incomplete.

The language in paragraphs 19 and 22 illustrates the distinction between curing the default after acceleration and reinstating the mortgage after acceleration. Paragraph 22 explains that "the right to cure" is the mortgagor's right to pay the pre-acceleration default amount owed and thus be protected from acceleration. If the mortgagor fails to cure, then the mortgagee may accelerate the note, with the entire amount of the note immediately due and owing—not just the pre-acceleration default amount. The mortgagor may reinstate the mortgage—which would return the mortgage to its pre-acceleration status with monthly payments—by satisfying the four conditions set out in paragraph 19. Under paragraph 19, to reinstate the mortgage after acceleration, the mortgagor must: (1) cure the default; (2) cure any default of any other covenant or agreement in the mortgage; (3) pay any expenses incurred in enforcing the security instrument, including, for example, reasonable attorneys' fees and property inspection and valuation fees; and (4) take any action as reasonably required by the mortgagee to protect its interest in the mortgage.

---

*Thompson I*, 915 F.3d at 804-05. The First Circuit later vacated that decision and certified a question to the Supreme Judicial Court of Massachusetts because, in its petition for panel rehearing *en banc*, the mortgagee, for the first time, claimed that a Massachusetts banking regulation required the mortgagee to use the same language that it used in its notice of default. *Thompson v. JPMorgan Chase, N.A.*, 931 F.3d 109, 110, 111 (1st Cir. 2019) (*Thompson II*). As of this opinion, *Thompson II* remains pending. Regardless, it does not apply to this case.

Informing plaintiff in a notice of default and intent to accelerate of the "right to *cure* the default after acceleration" is not equivalent to informing him of "the right to *reinstate* after acceleration[,]" because curing the default is only one component of reinstating the mortgage after acceleration under paragraph 19. Indeed, had plaintiff cured the default after acceleration as the default notice stated—by paying the pre-acceleration amount owed—the mortgage would not have been reinstated, and the entire balance of the loan would remain immediately due and owing. Accordingly, we conclude that the default notice "significantly, and inexcusably, differed from, watered down, and overshadowed the notice that was contractually and legally required" by paragraph 22 of the mortgage. *Federal National Mortgage Association v. Marroquin*, 74 N.E.3d 592, 595 (Mass. 2017) (deletion omitted).

Nonetheless, defendants argue that, based on the particular facts of this case, the terms are equivalent because curing the default was the only condition that plaintiff would have had to satisfy to reinstate the mortgage under paragraph 19. Indeed, defendants assert that there is nothing in the record to support an inference that plaintiff's default consisted of anything other than his failure to make monthly mortgage payments. Accordingly, defendants argue that the default notice strictly complied with paragraph 22 because it informed plaintiff of the right to cure the default after acceleration. We disagree.

In *Hedco*, cited *supra*, a case involving an eviction action against a tenant living in federally subsidized housing, we were tasked with determining whether a termination notice strictly complied with applicable federal regulations. *Hedco*, 763 A.2d at 642-43. We explained that, in evaluating the sufficiency of the notice, "the important factor is whether the statute has been complied with and not whether the tenant has been misled by the notice given." *Id.* at 642 (quoting *Tate v. Peter Charles Reynolds, Inc.*, 622 A.2d 449, 450 (R.I. 1993)). Moreover, as the

- 13 -

*Pinti* court explained: "The [mortgagee's] assertion that the [mortgagors] in this case were not prejudiced by any failure to comply with the provisions of paragraph 22 misses the point. Paragraph 22 demands strict compliance, regardless of the existence, or not, of prejudice to a particular mortgagor." *Pinti*, 33 N.E.3d at 1223 n.20. This reasoning applies to the case at bar. Whether curing the default was the only unsatisfied condition under paragraph 19 is not relevant to our analysis in this appeal. We look to the content of the default notice itself, not the particular facts related to the mortgagor.

In sum, the default notice failed to strictly comply with paragraph 22 because it failed to inform plaintiff of the right to reinstate after acceleration. Because the default notice failed to strictly comply with paragraph 22, defendants failed to satisfy the condition precedent to a valid foreclosure. Accordingly, we deem the foreclosure sale to be void.

The potential impact this new rule of law could have on the finality of foreclosures has not escaped us. To the extent that this opinion is viewed as a new rule of law, it is to be given prospective effect. *See State v. Arpin*, 122 R.I. 643, 657, 410 A.2d 1340, 1347 (1980) (explaining that, in the past, the Court "has chosen to apply new rules of law in the manner best suited to serve the interests of justice and to avoid hardship"). Specifically, the pronouncement in this opinion applies to the case at bar and to cases pending in the Superior Court in which this specific issue has been, or may be, raised.

**Conclusion**

For the reasons set forth in this opinion, we vacate the order of the Superior Court and remand this case to the Superior Court.

- 14 -

**STATE OF RHODE ISLAND AND** **PROVIDENCE PLANTATIONS**

**SUPREME COURT – CLERK'S OFFICE**

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Cesar A. Woel v. Christiana Trust, as Trustee for Stanwich Mortgage Loan Trust Series 2017-17, et al. |
| **Case Number** | No. 2018-347-Appeal. (PM 16-921) |
| **Date Opinion Filed** | June 2, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Maureen B. Keough |
| **Attorney(s) on Appeal** | For Plaintiff: Todd S. Dion, Esq. |
| | For Defendants: John S. McNicholas, Esq. |