July 2, 2025

**Supreme Court**

No. 2024-208-Appeal.
(PC 23-31)

Dino J. Guilmette              :

          v.                   :

PHH Mortgage Services FKA Ocwen   :
     Loan Servicing LLC et al.

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Dino J. Guilmette           :

v.             :

PHH Mortgage Services FKA Ocwen  :
   Loan Servicing LLC et al.

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

# O P I N I O N

**Justice Long, for the Court.**  Dino J. Guilmette (Mr. Guilmette or plaintiff)

appeals from a judgment of the Superior Court in favor of the defendants, PHH

Mortgage Corporation d/b/a PHH Mortgage Services, successor to Ocwen Loan

Servicing, LLC (PHH), and Wells Fargo Bank, N.A. as Trustee for Option One

Mortgage Loan Trust 2007-3, Asset-Backed Certificates, Series 2007-3 (Wells

Fargo) (collectively, defendants), following the grant of the defendants' motion for

summary judgment.[1]  This case came before the Supreme Court pursuant to an order

directing the parties to appear and show cause why the issues raised in this appeal

---

[1] The plaintiff's complaint incorrectly identified PHH as "FKA Ocwen Loan Servicing LLC" and incorrectly identified Wells Fargo.

should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that we may decide this case without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Procedural History

The following facts are drawn from defendants' statement of undisputed facts and exhibits submitted along with their joint motion for summary judgment.  Mr. Guilmette is the former owner of the property located at 16 Allendale Avenue in North Providence, Rhode Island (the property).  On September 1, 2006, he executed a mortgage against the property in favor of Option One Mortgage Corporation to secure payment of a $265,000 promissory note.  In January 2010, the mortgage was assigned to Wells Fargo as Trustee.  PHH was the mortgage servicing company for Mr. Guilmette's loan.

Mr. Guilmette eventually became unable to make his monthly payments and requested a modification.  On or about June 27, 2014, he executed a Shared Appreciation Modification Agreement (the modification agreement) to modify the mortgage.  Under the modification agreement the principal balance of the mortgage was increased to $309,291.67, of which $208,591.67 was deferred and would be eligible for forgiveness after three years of timely payments (the deferred principal balance), and $100,700 was designated as the interest-bearing principal.

- 2 -

The modification agreement also defined a "Shared Appreciation Amount." Mr. Guilmette would be required to pay the shared appreciation amount if the property increased in value after the modification date and was sold in an arm's-length transaction. According to the modification agreement that was attached to defendants' statement of undisputed facts, the shared appreciation amount would be equal to "25% of the difference between the gross sale price of the [p]roperty and $100,700 [(the interest-bearing principal)]," less any credits for capital improvements and "any amount of appreciation in excess of the Deferred Principal Balance." "In no event [would] the shared appreciation amount be more than [the] Deferred Principal Balance ($208,591.67)." (Emphasis omitted.)

Appended to the modification agreement was the shared appreciation disclosure (the disclosure statement) which provided examples of how the shared appreciation amount would be calculated under different scenarios. It is undisputed that Mr. Guilmette signed the disclosure statement at the time of his modification. Example 2 in the disclosure statement outlined a hypothetical scenario where a home sold for $120,000, the interest-bearing principal under the modification was $100,000, and the deferred principal balance was $30,000. To calculate the shared appreciation amount, the example explained that the parties would calculate 25 percent of the $20,000 difference between the sale price ($120,000) and the interest-bearing principal ($100,000), resulting in a total of $5,000. Then, because

the modification agreement specifies that the shared appreciation amount would never exceed the deferred principal balance, and because $5,000 is less than the $30,000 deferred principal balance, the borrower would owe $5,000.

Mr. Guilmette sold the property for $350,000 in May 2022. Prior to the consummation of the sale, PHH provided a written explanation and calculation of Mr. Guilmette's total payoff amount under the modification agreement, which factored in the shared appreciation amount. Counsel for Mr. Guilmette subsequently approached PHH to discuss the expected total payoff amount. The defendants explained that they calculated the shared appreciation amount by subtracting the interest-bearing principal ($100,700) from the sale price ($350,000), and then calculating 25 percent of that difference, or $62,325. Because $62,325 was "less than the Deferred Principal Balance of $208,591.67[,]" plaintiff was not entitled to a credit. PHH then added that shared appreciation amount to the outstanding interest-bearing principal balance, yielding a full payoff figure of $149,050.63. Mr. Guilmette's attorney informed PHH that he disputed the calculation of the shared appreciation amount but tendered the full amount after executing the sale of the property.

Mr. Guilmette subsequently filed the instant action alleging a single cause of action for breach of contract. In his complaint, plaintiff alleged that defendants' calculation of the shared appreciation amount was incorrect. Quoting the language

of the modification agreement, plaintiff alleged that PHH failed to subtract the "amount of appreciation in excess of the Deferred Principal Balance" from $62,325, and therefore calculated a payoff amount that was $40,708.33 more than the modification agreement required. Mr. Guilmette alleged that under the terms of the modification agreement, PHH was obligated to calculate the difference between $249,300 (the total after subtracting the interest-bearing principal from the sale price) and $208,591.67 (the deferred principal balance) to calculate the "appreciation in excess of Deferred Principal Balance." Then, plaintiff alleged, PHH should have subtracted *that* total, or $40,708.33, from $62,325. Had they done this calculation appropriately, plaintiff argued, the shared appreciation amount should have been just $21,616.67. The defendants filed an answer denying plaintiff's allegations.

The defendants then filed a joint motion for summary judgment. In their memorandum in support of their motion for summary judgment, they argued that the undisputed material facts establish that they did not breach the modification agreement and therefore were entitled to judgment as a matter of law. The defendants argued that the terms of the modification agreement were clear and unambiguous and that they correctly calculated the shared appreciation amount. The defendants stressed that, in order to make sure there was no ambiguity in the proper methodology used to calculate the shared appreciation amount, the modification agreement included the disclosure statement, which contained specific examples.

Here, the undisputed facts were similar to example 2 in the disclosure statement, and the court need only review that example to see that defendants' calculations were accurate. The plaintiff, defendants argued, misinterpreted the language of the modification agreement, added a step to the shared appreciation calculation that was not required by the modification agreement, and therefore miscalculated the shared appreciation amount. Specifically, defendants argued that plaintiff was incorrect when he suggested that they had to subtract out the "amount of appreciation in excess of the Deferred Principal Balance" before reaching the final shared appreciation amount because that "clear[ly] contradict[ed] * * * the definitions and examples" in the modification agreement and the disclosure statement. The defendants concluded their motion with examples to illustrate how the modification agreement was designed to protect borrowers from paying more than the deferred principal balance after a sale.

Mr. Guilmette did not dispute any of defendants' factual assertions in his opposition to defendants' motion for summary judgment. Rather, he asserted that defendants incorrectly calculated the payoff amount because of an ambiguity in the modification agreement which created a dispute of material fact that precluded summary judgment. Mr. Guilmette argued that the phrase "less * * * any amount of appreciation * * * in excess of the Deferred Principal Balance" in paragraph 3(A)(III)(a)(ii) of the modification agreement was ambiguous. Mr. Guilmette

argued that defendants had interpreted the words to require a certain calculation, but "the [p]laintiff interpreted the words 'amount of appreciation' as having their plain and ordinary meaning as the difference between the Sale Price * * * subtracted by the Interest Bearing Principal * * *." Because of this differing interpretation, the parties arrived at different shared appreciation amounts. Mr. Guilmette asserted however that because the phrase "is clearly open to the [p]laintiff's interpretation of that section," the contract was ambiguous and summary judgment was inappropriate. Moreover, Mr. Guilmette argued that "there is nothing within the actual [modification agreement] in its attempted explanation of the so-called Shared Appreciation Amount that clearly points to or refers to separately titled examples or disclosures regarding the Shared Appreciation calculation."

The defendants' motion for summary judgment was heard before a justice of the Superior Court on May 15, 2024. The trial justice determined that there was no dispute of fact and that the existence of ambiguity in the modification agreement was a question of law; and he concluded that the modification agreement and the disclosure statement were clear and unambiguous. The trial justice determined that the contract was not susceptible to multiple reasonable interpretations because the disclosure statement gave an illustrated example of how the shared appreciation amount was calculated under the modification agreement. Consequently, the trial justice granted defendants' motion for summary judgment, concluding that

defendants had correctly calculated the payoff amount. The Superior Court entered judgment in favor of defendants on May 21, 2024. Mr. Guilmette filed a timely notice of appeal on June 10, 2024.

On appeal, we are tasked with determining whether the language of the modification agreement is ambiguous when viewed in the light most favorable to Mr. Guilmette as the nonmoving party. We conclude that it is not and we therefore affirm the trial justice.

**Discussion**

This Court reviews a decision on a motion for summary judgment *de novo*. *Woel v. Christiana Trust, as Trustee for Stanwich Mortgage Loan Trust Series 2017-17*, 228 A.3d 339, 344 (R.I. 2020). At summary judgment, we view the evidence in the light most favorable to the nonmoving party, and, if the Court concludes that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law, the Court will affirm the judgment. *Id*. Whether the terms of a contract are ambiguous is a question of law. *Garden City Treatment Center, Inc. v. Coordinated Health Partners, Inc.*, 852 A.2d 535, 541 (R.I. 2004). "A term in a contract is ambiguous when it is reasonably and clearly susceptible to more than one rational interpretation." *Woel*, 228 A.3d at 345 (quoting *Chariho Regional School District v. State*, 207 A.3d 1007, 1015 (R.I. 2019)). In analyzing a contract's terms, we read the contract in its entirety. *Wilmington Savings Fund*

*Society, FSB, as Trustee of Bosco Credit II Trust Series 2010-1 v. Cavalloro*, 295 A.3d 360, 364 (R.I. 2023). If this Court concludes that a contract is ambiguous, interpretation of that contract becomes a question of fact. *Botelho v. City of Pawtucket School Department*, 130 A.3d 172, 177-78 (R.I. 2016).

Before this Court, the parties largely repeat their arguments advanced at the hearing on the motion for summary judgment. Mr. Guilmette argues that there is a question of fact as to the appropriate calculation under the modification agreement which, in his mind, should yield a different payoff amount than the one defendants calculated, and defendants' miscalculation stemmed from an ambiguity in the contract. For their part, defendants argue that the modification agreement is unambiguous. They point out that the disclosure statement included specific examples, which plaintiff acknowledged by signing, and the undisputed facts match example 2, which explains how the contract would be interpreted under scenarios like plaintiff's. Ultimately, defendants argue that plaintiff's incorrect interpretation of the contract does not make that contract ambiguous.

The existence of ambiguity in the text of a contract is a question of law which we review *de novo*, and by viewing the document in its entirety. *Garden City Treatment Center*, 852 A.2d at 541-42. Undertaking this analysis, we conclude that the modification agreement is unambiguous.

The modification agreement is unambiguous because the disclosure statement illustrates the method for calculating the shared appreciation amount. The disclosure statement is appended to the modification agreement, and Mr. Guilmette signed the disclosure statement when he modified his mortgage in June 2014. In that statement, defendants explained how a shared appreciation amount would be calculated following an arm's-length sale of the property. Example 2 illustrated that after the parties calculated the difference between the sale price and the interest-bearing principal, they would then calculate 25 percent of that figure. If that number was below the deferred principal balance, the borrower is not due any credit because there is no amount "in excess of the Deferred Principal Balance." This mathematical structure mirrors the order of operations contained in the text of the modification agreement and illustrates the principles using real numbers. As defendants asserted in their undisputed statement of facts, example 2 contains the exact situation presented by the facts of this case and the calculation in example 2 is, therefore, the same calculation PHH performed when calculating Mr. Guilmette's total payoff amount. When we review the modification agreement in light of the calculations contained in the disclosure statement, we discern no ambiguity.

Example 4 in the disclosure statement is even more illustrative of the modification agreement's design and intent. In example 4, the deferred principal balance is $30,000, and 25 percent of the difference between the sale price and the

- 10 -

interest-bearing principal equals $31,250. In that scenario, unlike example 2, the phrase "less * * * any amount of appreciation in excess of the Deferred Principal Balance" comes into play. To give that section meaning, the example illustrates that $1,250 would be subtracted from $31,250 to result in a total shared appreciation amount owed of $30,000. Example 4 thus illustrates how the modification agreement is designed to ensure that the borrower never owes more than the deferred principal balance. When we read examples 2 and 4 in conjunction with the modification agreement, it is plain and unambiguous how the phrase "less * * * any amount of appreciation in excess of the Deferred Principal Balance" is intended to be understood—namely, as a way to ensure that the shared appreciation amount never exceeds the deferred principal balance, rather than, as Mr. Guilmette contends, requiring an additional step to factor in the "amount of appreciation in excess of the Deferred Principal Balance."

Mr. Guilmette reads ambiguity into the modification agreement by arguing that the language "less * * * any amount of appreciation in excess of the Deferred Principal Balance" means, or at least arguably could mean, that defendants were required to engage in an additional step to calculate the "amount of appreciation in excess of the Deferred Principal Balance" prior to discerning the final shared appreciation amount. However, this proposed reading is unreasonable in light of the illustrations contained in the disclosure statement, which do not require the

- 11 -

additional step that plaintiff suggests. *See Cathay Cathay, Inc. v. Vindalu, LLC*, 962 A.2d 740, 746 (R.I. 2009) ("A contract may be deemed ambiguous only if 'it is *reasonably* and *clearly* susceptible of more than one interpretation.'") (emphasis added) (quoting *Rotelli v. Catanzaro*, 686 A.2d 91, 94 (R.I. 1996)).

Additionally, Mr. Guilmette argues that the definition of the shared appreciation amount is ambiguous because the phrase "less * * * any amount of appreciation in excess of the Deferred Principal Balance" is unclear. Mr. Guilmette's reading of that phrase, however, reflects two central misunderstandings about the modification agreement. First, to him, the "plain and ordinary meaning" of that phrase means that the difference between the sale price and the interest-bearing principal establishes the "amount of appreciation"; and defendants were then required to subtract the deferred principal balance from *that* amount to find the "amount of appreciation in excess of the Deferred Principal Balance." However, Mr. Guilmette does not explain why this Court should conclude that the modification agreement is reasonably and clearly susceptible to his interpretation. *Garden City Treatment Center*, 852 A.2d at 541-42. Black's Law Dictionary defines "appreciation" as the "increase in an asset's value, usu[ally] because of inflation[.]" Black's Law Dictionary 125 (12th ed. 2024); *see Garden City Treatment Center*, 852 A.2d at 542-43 (looking to Black's Law Dictionary to assist in determining the plain and ordinary meaning of a contract term). The plain language of the

- 12 -

modification agreement does not reflect that the difference between the sale price and the interest-bearing principal establishes the amount of the increase in the property's value. And, even if it did, Mr. Guilmette reads the words of the modification agreement in isolation to add a step to the shared appreciation calculation, but this Court does not "stretch its imagination in order to read ambiguity into a contract where none is present." *Garden City Treatment Center*, 852 A.2d at 542 (brackets omitted) (quoting *Textron, Inc. v. Aetna Casualty and Surety Co.*, 638 A.2d 537, 539 (R.I. 1994)). When we read the words of the agreement in their appropriate context, it is clear and unambiguous that the phrase "less * * * any amount of appreciation in excess of the Deferred Principal Balance" is intended to capture the agreement's intent that any amount of appreciation in excess of the deferred principal balance will be subtracted so that the shared appreciation amount never exceeds the deferred principal balance.

Second, Mr. Guilmette suggests that his interpretation of the modification agreement is reasonable because the modification agreement contains "nothing * * * that clearly points to or refers to separately titled examples or disclosures regarding the Shared Appreciation calculation." Of course, this reading of the modification agreement ignores the disclosure statement, its examples, and its disclosures, which clearly illustrate the shared appreciation calculation. That disclosure statement contains example 2, which, as discussed, answers the questions raised by this case.

Under our *de novo* review of the language of the modification agreement in its entirety, there is no question of law as to the modification agreement's ambiguity, and there is, therefore, no question of fact as to the proper interpretation of that contract that would preclude summary judgment. Accordingly, we affirm the judgment of the trial justice.

## Conclusion

For the reasons contained herein, we affirm the judgment of the Superior Court. The papers may be remanded to the Superior Court.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex

250 Benefit Street

Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Dino J. Guilmette v. PHH Mortgage Services FKA Ocwen Loan Servicing LLC et al. |
| **Case Number** | No. 2024-208-Appeal.<br>(PC 23-31) |
| **Date Opinion Filed** | July 2, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Christopher K. Smith |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Todd S. Dion, Esq. |
| | For Defendants:<br><br>Krystle G. Tadesse, Esq. |